*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

KIM CARTER MARTINEZ,
*Plaintiff-Appellee,*

v.

ZOOMINFO TECHNOLOGIES INC.,
*Defendant-Appellant.*

———————————————

*Appeal from the United States District Court for the Western District of Washington (Tacoma), Senior District Judge Marsha J. Pechman, No. 3:21-cv-05725-MJP-BNW*

## *AMICUS CURIAE* BRIEF OF INTELLECTUAL PROPERTY AND FIRST AMENDMENT LAW PROFESSORS

PROFESSOR MARK A. LEMLEY
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605 Telephone
mlemley@law.stanford.edu

REBECCA TUSHNET
HARVARD LAW SCHOOL
1575 Massachusetts Avenue
Cambridge, Massachusetts 02138
(703) 593-6759 Telephone
rtushnet@law.harvard.edu

*Counsel for Amici Curiae*

 

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

INTEREST AND IDENTITY OF AMICI ............................................................1

SUMMARY OF ARGUMENT ............................................................................1

ARGUMENT .......................................................................................................2

      I.     ZoomInfo Provides Accurate Information About Martinez
           in Response to Search Queries ...............................................................2

      II.    ZoomInfo's Underlying Product Is Noncommercial Speech ...............5

      III.   The First Amendment Strongly Protects Truthful Speech Against
           Right of Publicity Claims ......................................................................9

           A.     Strict Scrutiny Applies to Right of Publicity Claims Against
                  ZoomInfo's Service ....................................................................9

           B.     Advertising of ZoomInfo's Ability to Provide Truthful
                  Information about Martinez Acquires Strong First Amendment
                  Protection ..................................................................................14

CONCLUSION ..................................................................................................18

APPENDIX ........................................................................................................19

CERTIFICATE OF COMPLIANCE ..................................................................21

CERTIFICATE OF SERVICE ..........................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aldrin v. Topps Co.*,
  No. 10-cv-9939, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ..................15

*Baehr v. Creig Northrop Team, P.C.*,
  953 F.3d 244 (4th Cir. 2020) ......................................................................11

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60, 67 n. 14 (1983) .....................................................................16

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786, 790 (2011) ....................................................................5, 9, 11

*Brown v. Showtime Networks, Inc.*,
  394 F.Supp.3d 418 (S.D.N.Y. 2019) ..........................................................17

*C.B.C. Distribution & Mktg., Inc. v. Major League Baseball*,
  505 F.3d 818 (8th Cir. 2007) ..................................................................6, 13

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
  95 F.3d 959 (10th Cir. 1996) ...........................................................5, 12, 13

*Charles v. City of Los Angeles*,
  697 F.3d 1146 (9th Cir. 2012) ...............................................................14, 16

*Cher v. Forum Int'l, Inc.*,
  692 F.2d 634 (9th Cir. 1982) ......................................................................16

*City of Lakewood v. Plain Dealer Publ'g Co.*,
  486 U.S. 750 (1988).....................................................................................5

*Daly v. Viacom, Inc.*,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002).......................................................17

*De Havilland v. FX Networks, LLC*,
  230 Cal.Rptr.3d 625 (Ct. App. 2018) ..........................................................17

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ........................................................................7

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ........................................................................4

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985)....................................................................................12

*Eastwood v. Superior Court*,
149 Cal. App. 3d 409 (1983) ...................................................................................4

*Gaudiya Vaishnava Soc'y v. City & Cnty. of S.F.*,
952 F.2d 1059 (9th Cir. 1990) ................................................................................8

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) ...................................................................................7

*Guglielmi v. Spelling-Goldberg Prods.*,
25 Cal. 3d 860 (1979) ...........................................................................................14

*Hoffman v. Capital Cities/ABC, Inc.*,
255 F.3d 1180 (9th Cir. 2001) ................................................................................5

*Janus v. American Federation of State, County, and Mun. Employees, Council 31*,
138 S.Ct. 2448 (2018)............................................................................................11

*Martinez v. ZoomInfo Technologies Inc.*,
2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) .................................................4, 6

*Montana v. San Jose Mercury News, Inc.*,
34 Cal. App. 4 4th 790 (1995) ...........................................................................4, 15

*New York Magazine v. Metropolitan Transp. Auth.*,
987 F.Supp. 254 (S.D.N.Y. 1997) .........................................................................17

*New York Magazine v. Metropolitan Transp. Auth.*,
136 F.3d 123 (2d Cir. 1998) ..................................................................................17

*Page v. Something Weird Video*,
960 F.Supp. 1438 (C.D. Cal. 1996)........................................................................17

*People v. Fogelson*,
577 P.2d 677 (Cal. 1978)........................................................................................17

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)................................................................................................10

*Retail Digital Network, LLC v. Appelsmith*,
861 F.3d 839 (9th Cir. 2017) .................................................................................15

*Riley v. Nat'l Fed'n of the Blind of N.C.*,
487 U.S. 781 (1988).................................................................................................7

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) .........................................................................9, 10, 12

*Smith v. California*,
361 U.S. 147 (1959)..................................................................................................5

iii

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)..................................................................10, 15

*U.S. v. United Foods, Inc.*,
533 U.S. 405 (2001)........................................................................5

*United States v. Stevens*,
559 U.S. 460 (2010).................................................................10, 11

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
953 F.3d 1170 (9th Cir. 2020) ...................................................8, 14

*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985).......................................................................15

**INTEREST AND IDENTITY OF AMICI**

Amici are intellectual property or constitutional law professors at law schools throughout the United States.  We have no professional or pecuniary interest in the outcome of this case, but we have an academic interest in seeing that the law develops in a way that serves the public interest and the purposes of both IP and constitutional law.[1]  A full list of amici is attached as Appendix A.

**SUMMARY OF ARGUMENT**

The right of publicity protects individuals from the unauthorized use of their name or likeness in commercial advertising or promotion. It does not – and to be consistent with the First Amendment, cannot – prevent the publication or disclosure of truthful, non-intimate information about an individual, even if the entity doing the publishing is a for-profit business (as most media outlets are). California courts have recognized the constraints the First Amendment imposes on the literal language of section 3344 and on the common-law right of publicity.

On the allegations of the complaint, ZoomInfo truthfully represented that it had information about Martinez in response to a search for Martinez's name, both

---

[1]  Counsel for the parties did not author this brief in whole or in part. The parties have not contributed money intended to fund preparing or submitting the brief. No person other than Amici Curiae or their counsel contributed money to fund preparation or submission of this brief. All parties have consented to the filing of this brief.

on its own platform and on search engines. The search results on ZoomInfo's own platform and the advertisements complained of did not use Martinez's identity to market unrelated products. As a result, ZoomInfo's conduct does not violate the right of publicity as narrowed by California courts and as compelled by the First Amendment.

ZoomInfo does not use Martinez's name or likeness to market its product in response to inquiries not related to Martinez; doing so would present a different issue not amenable to class treatment. Rather, Martinez complains that a search for her name on Google or on ZoomInfo returns some limited information about her, contends that ZoomInfo uses that information to try to persuade searchers who used her name to subscribe to its service and thus obtain further information, and alleges that this is true of searches for others' names as well. Responding to a search query by providing truthful information about the subject of that query does not violate the right of publicity. And if California's right of publicity law did extend so far it would not be constitutional.

## ARGUMENT

### I. ZoomInfo Provides Accurate Information About Martinez in Response to Search Queries

This is not a case in which Martinez claims ZoomInfo is using her name and likeness to sell its products generally. Rather, according to the complaint,

Martinez's name appears only if someone searches for her name. If they do so on Google, they will see ZoomInfo's offer to provide information about her. If they do so on ZoomInfo, they will see a preview profile—her name, employer, job title, workplace address, and a partially redacted email address. There is no dispute that the information on Martinez's preview profile is accurate and publicly available. There is similarly no dispute that the Google ad or her preview page is shown only to users who search her name. She is not singled out in any way. To the contrary, she claims to represent a class composed of everyone ZoomInfo has biographical data about.

Martinez's complaint, according to the district court, is "that when a user searches for an individual either on a search engine or ZoomInfo, ZoomInfo displays "teaser profiles" showing some information about the individual and offering "full access" in exchange for a fee-based subscription. (Id. ¶¶ 5-6, 28-38.) It is this teaser profile about her that forms the focus of Martinez's claims. (Id. ¶¶ 28-38.) Martinez does not allege that the inclusion of information about her in the database violates her rights; instead, she argues that truthfully representing that relevant information is in the database violates her rights.

After briefly noting that the right of publicity did not prevent the use of the names and likenesses of public figures,[2] the district court devoted only a single paragraph to the merits of Martinez's right of publicity claim. That paragraph reads, in its entirety,

> The teaser profile using Martinez's persona invites visitors to subscribe to ZoomInfo's services to learn more about her without touching on issues of general public interest. So while ZoomInfo may operate a database that might concern matters of general interest, its specific use of Martinez's persona at issue in this case is purely commercial in nature and does not fall within the Section 3344(d) carveout.

*Martinez*, 2022 WL 1078630 at *6.

ZoomInfo's provision of truthful information about Martinez in response to a search request, whether on Google or on ZoomInfo's own site, is targeted, relevant, factual information of the sort the First Amendment protects. Section

---

[2] Here's what the district court said about the free speech limitations on a Section 3344 claim:

> One cannot maintain a claim under Section 3344 based on "'the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it.'" [*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001)] (quoting *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995)). "This First Amendment defense extends 'to almost all reporting of recent events,' as well as to publications about 'people who, by their accomplishments, mode of living, professional standing, or calling, create a 'legitimate and widespread attention' to their activities.'" *Id.* (quoting [*Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 422 (1983)]).

3344 has not previously been read to prohibit such information.  But if it does, it violates the First Amendment.

As to the teaser profile on ZoomInfo's own platform, ZoomInfo's provision of truthful information in response to a search request about a person is non-commercial speech fully protected by the First Amendment, even though ZoomInfo is offering that speech for profit.

## II.     ZoomInfo's Underlying Product Is Noncommercial Speech

Commercial speech is often defined as speech that does no more than propose a commercial transaction. *U.S. v. United Foods, Inc.*, 533 U.S. 405, 409 (2001).  That is, commercial speech is, roughly speaking, an offer to sell something other than the speech itself. By contrast, speech that is itself the expressive product being sold is noncommercial.  *See, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (video games); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988) ("Of course, the degree of First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away."); *Smith v. California*, 361 U.S. 147, 150 (1959) (same); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185-86 (9th Cir. 2001) (nonadvertising, for-profit speech was noncommercial and entitled to First Amendment protection against right of publicity claims); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996) ("Cardtoons' trading cards . . .

are not commercial speech—they do not merely advertise another unrelated product. Although the cards are sold in the marketplace, they are not transformed into commercial speech merely because they are sold for profit.").

The district court mistakenly merged the commercial speech and public interest inquiries, treating commercial speech and speech with commercial *value* as equivalent. *Martinez v. ZoomInfo Technologies Inc.*, 2022 WL 1078630, at *6 (W.D. Wash. Apr. 11, 2022).

This was a category error. Commercial speech proposes a commercial transaction. Noncommercial speech does not, even when the speech itself is sold in the market. Noncommercial speakers do not need good reasons to be allowed to speak freely. Rather, the government requires a compelling interest to stop them. In the absence of a strong governmental interest such as protection against material consumer deception, invasion of privacy, or defamation—none of which are elements of the right of publicity claim here—the government lacks an interest in protecting Martinez against being named or depicted in information about her distributed to the public.

When biographer writes a biography, or when a fantasy baseball game uses the identities of baseball players, they are engaged in noncommercial speech even though their activities are for profit. *See, e.g., C.B.C. Distribution & Mktg., Inc. v. Major League Baseball*, 505 F.3d 818, 823 (8th Cir. 2007) (First Amendment

precludes ROP claim by players arising from use of their "names, nicknames, likenesses, signatures, pictures, playing records, and/or biographical data" in fantasy baseball game); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410-11 (2001) (noncommercial use of "factual data concerning the players, their performance statistics, and verbal descriptions and video depictions of their play" was absolutely protected by First Amendment from right of publicity claims).

Directories that simply present information about individuals without even requiring a query, like the phone book, have been held to be "[n]oncommercial" speech entitled to strong First Amendment protection. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954, 956 (9th Cir. 2012). The fact that other components of a directory, like the Yellow Pages, "are obviously commercial in nature" does not eliminate First Amendment protection. *Id.* at 954. And courts have extended the extra protections for noncommercial speech even to truly commercial advertisements for noncommercial speech products. *Id.* at 963. They do so because of "the reality that without solicitation the flow of [informative speech] . . . would likely cease." *Id.* (quoting *Riley v. Nat'l Fed'n of the Blind of N.C.,* 487 U.S. 781, 796 (1988).

In short, First Amendment cases establish that noncommercial speech includes communicative works sold in the marketplace. Indeed, the Ninth Circuit

has explicitly rejected the argument that items with "intrinsic value" are inherently commercial speech. *Gaudiya Vaishnava Soc'y v. City & Cnty. of S.F.*, 952 F.2d 1059, 1063-65 (9th Cir. 1990) (message-bearing items such as T-shirts and jewelry were noncommercial speech); *see also, e.g.*, *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174-75 (9th Cir. 2020) (parody dog toy sold for profit was protected speech). As cases such as *Gaudiya Vaishnava* and *VIP* make clear, when the cause of action targets the speech aspect of a product or service, the First Amendment requires assessing the claim as a regulation of speech. Martinez's claim targets the presentation of information contained in and presented by a database of facts. That is noncommercial speech.

To hold otherwise would sweep in most private speakers with significant reach, since many such speakers seek economic benefits from speech. On Martinez's theory, for example, Google arguably violates the right of publicity every time it returns an organic search result about a person, because while Google provides free organic search results it hopes to make money by having people click on related ads it displays alongside those search results. The telephone white pages directory too might violate the right of publicity because it makes its money by attaching paid advertising in the form of Yellow Pages directories. True, the information ZoomInfo provides about Martinez is tailored to her, but so is the

search the searcher conducts. ZoomInfo doesn't use information about her except in direct response to a search for her.

Likewise, as to the advertising on Google, ZoomInfo is entitled to truthfully advertise that it possesses nondefamatory information about Martinez, because the underlying product—information—is itself fully constitutionally protected. Martinez does not and could not claim that inclusion of truthful, non-intimate information about her in ZoomInfo's database violates her right of publicity.

Because this is a class action, Martinez's theory is that providing truthful information about anyone is illegal under California law when done for a commercial purpose. The First Amendment does not permit this, and California law should not be interpreted to conflict with the First Amendment.

## III. The First Amendment Strongly Protects Truthful Speech Against Right of Publicity Claims

### A. Strict Scrutiny Applies to Right of Publicity Claims Against ZoomInfo's Service

Strict scrutiny applies to the right of publicity when it serves as a regulation of noncommercial speech, which receives a high level of constitutional protection. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011); *see also Sarver v. Chartier,* 813 F.3d 891, 903-04 (9th Cir. 2016) (recognizing that strict scrutiny applies to right of publicity claims against noncommercial speech such as for-profit movies).

Laws that regulate noncommercial expression based on its content are ordinarily unconstitutional, as "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010). This Court has already explicitly held that "[b]y its terms, California's right of publicity law clearly restricts speech based upon its content" and is "presumptively unconstitutional" as applied to noncommercial, for-profit speech. *Sarver*, 815 F.3d 903, 906. This strict rule applies both to state statutory and common-law claims. *Id.* at 903.

No other conclusion is possible. The right of publicity singles out "particular subject matter" for regulation and therefore is "based on the message a speaker conveys"—Martinez's claim is based on ZoomInfo's truthful claim to possess information about her—and that is the trigger for strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011) ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated.").

Although older cases may have approved of broad right of publicity claims, that is not the case in recent years. The Supreme Court has "emphatically rejected [the] 'startling and dangerous' proposition" that the government "could create new

categories of unprotected speech by applying a 'simple balancing test' that weighs

the value of a particular category of speech against its social costs and then

punishes that category of speech if it fails the test." *Brown*, 564 U.S. at 792

(quoting *Stevens*, 559 U.S. at 470). Instead, restrictions on noncommercial speech

(1) must be justified by a compelling government interest and (2) must be narrowly

tailored. *See, e.g.*, *Brown*, 564 U.S. at 799. Notably, the pre-*Sarver* cases engaged

in exactly the kind of ad hoc balancing that is off-limits after *Brown* and *Stevens*.

Where information about a person is truthful, public biographical

information, rather than intrusive information that might constitute an invasion of

privacy, there is no compelling interest in applying the right of publicity to it

simply because the defendant benefits from using it.[3] Indeed, Martinez's theory of

liability would apply equally to credit reporting agencies and other providers of

truthful information. Such activities merit strong regulation for truthfulness and

---

[3] In the context of compelled speech, the Supreme Court has held that the fact that a person benefits from another's speech without paying for it—"free riding"—does not establish a compelling interest in making the first person pay. *Janus v. American Federation of State, County, and Mun. Employees, Council 31*, 138 S.Ct. 2448, 2466-67 (2018). Likewise, the idea that a person who creates a work conveying information about another person is unjustly enriched does not establish the existence of any harm that could be the basis for a compelling interest. *Cf. Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 257-58 (4th Cir. 2020) (noting that unjust enrichment rationales involve no actual harm at all to the claimant). Amici are unaware of any case holding that there can be a compelling interest in allowing the subject of speech to control another's noncommercial speech, in the absence of some more concrete state interest, merely because it seems unfair that the speaker benefits from the speech.

against discrimination, but the potentially compelling interests in ensuring truth and preventing discrimination are nothing like the interest in suppressing truthful information asserted here. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 756-57 (1985) (explaining state's strong interest in protecting private persons against defamation by falsehoods). Nor does the right of publicity target intrusive collection of information about individuals or otherwise intrusive uses of information in profiling, predicting, or surveilling individuals, as to which the tailoring inquiry would be quite different.

The Tenth Circuit has carefully reviewed the justifications for the right of publicity and noted that they are often inapplicable to specific uses—a conclusion highly relevant to the narrow tailoring inquiry. *See Cardtoons*, 95 F.3d at 973-76, For example, while certain applications of the right of publicity may provide incentives to develop a valuable persona, no right of publicity incentive is necessary or useful for someone to *have* a name, a phone number, a picture, a work history, or the other information ZoomInfo is accused of touting. *See Sarver*, 813 F.3d at 905 ("The state has no interest in giving Sarver an economic incentive to live his life as he otherwise would."); *Cardtoons*, 95 F.3d at 973 (distinguishing between the value of a specific performance and the value of having an identity). Likewise, a property rationale based on allocative efficiency may make sense for use of celebrity identities to advertise unrelated products, but that rationale does

not support a right of publicity beyond that scope. *Id.* at 975. So too with false-endorsement based rationales, not plausibly alleged here. *Id.*

The Eighth Circuit has reasoned similarly in rejecting a right of publicity claim arising from use of baseball players' "names, nicknames, likenesses, signatures, pictures, playing records, and/or biographical data" in fantasy baseball games. *C.B.C. Distribution & Mktg., Inc. v. Major League Baseball*, 505 F.3d 818, 823 (8th Cir. 2007). That court reasoned that "the facts in this case barely, if at all, implicate the interests that states typically intend to vindicate by providing rights of publicity to individuals," such as providing incentives and avoiding misleading endorsements. *Id.* at 824. "Publicity rights . . . are meant to protect against the loss of financial gain, not mental anguish," *id.* at 976, and mental discomfort in any event is not generally a sufficient interest to suppress truthful, nonintimate information.

Even assuming there is a compelling interest in providing people with an economic incentive to cultivate a valuable persona, a right of publicity that extends to noncommercial speech and beyond protection against false endorsement, defamation, and invasion of privacy is not narrowly tailored: The government's aims can easily be satisfied by providing people with rights to control their appearance in advertising for unrelated products and services and rights against false endorsement, causes of action that are narrowly tailored to achieve their

goals. *See VIP*, 953 F.3d at 1175-76 (setting out speech-protective test for identifying deceptive uses in non-advertising media).

**B.**     **Advertising of ZoomInfo's Ability to Provide Truthful Information about Martinez Acquires Strong First Amendment Protection**

ZoomInfo's provision of truthful search results, like Google's or the telephone book's, serves an important public interest.  So too does its accurate communication to potential customers of the fact that it has more information about Martinez.  Without the ability to do so, ZoomInfo could not provide the user any information in response to queries or communicate that it has additional information. "'It [is] illogical'" to allow use of Martinez's name in the directory as a whole, "'but preclude any advance discussion or promotion'" of that information. *Charles v. City of Los Angeles*, 697 F.3d 1146, 1154 (9th Cir. 2012) (*quoting Guglielmi v. Spelling-Goldberg Prods*., 25 Cal. 3d 860, 873 (1979) (Bird, C.J., concurring)).

It matters that Martinez's name or likeness is not being used to advertise an unrelated product, or even to advertise ZoomInfo generally, which could raise different concerns.  Rather, information about Martinez is being used to advertise the existence of the information itself.  The fact that ZoomInfo has information about Martinez is directly relevant to the advertising message it wants to convey – that it has additional information about Martinez.  The information "is the product,

and is protected." *Aldrin v. Topps Co.*, No. 10-cv-9939, 2011 WL 4500013, at *3 (C.D. Cal. Sept. 27, 2011) (trading cards do not violate the right of publicity where they are not being used to advertise an unrelated product); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4 4th 790, 796-97 (1995) (publisher could sell newspapers by reproducing a newspaper cover prominently featuring football star Joe Montana in ads because the ad accurately represented the sort of products the publisher sold).

Truthful, non-misleading commercial speech "is entitled to the protection of the First Amendment." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637 (1985). Commercial speech doctrine must therefore be understood in light of the *reason* that commercial speech can be more stringently regulated than noncommercial speech: the government's interest in protecting consumers. *Retail Digital Network, LLC v. Appelsmith*, 861 F.3d 839, 849 (9th Cir. 2017) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011) ("[T]he government's legitimate interest in protecting consumers from 'commercial harms' explains 'why commercial speech can be subject to greater governmental regulation than noncommercial speech.'")). Given that the right of publicity claim here does not implicate consumer protection, the justification for lesser First Amendment protection for commercial speech is not triggered.

As a result, courts have protected advertising that truthfully conveys the content of noncommercial speech against right of publicity claims. They have recognized that, unless such advertising inherits the protection of the underlying content being advertised, many speakers would be unable to reach audiences interested in their fully First Amendment-protected speech. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n. 14 (1983) (noting that general commercial speech rules may not apply to advertising for fully protected noncommercial speech).

California courts and others have regularly protected truthful advertising for fully First Amendment-protected speech to the same extent as the underlying noncommercial speech. They vary in how they describe the reasoning, but whether it is done as a matter of constitutional avoidance interpreting Section 3344's "commercial" requirement or done by directly applying the First Amendment, the result is uniformly the same. *See, e.g.*, *Charles*, 697 F.3d at 1154, 1156 (holding that advertisements for protected works are themselves protected "so as to prevent tort actions" like Martinez's "from choking the truthful promotion of protected speech"—at least "to the extent necessary to safeguard the ability to truthfully promote protected speech"); *Cher v. Forum Int'l, Inc.*, 692 F.2d 634, 638 (9th Cir. 1982) (advertisements of protected works are fully protected where the advertisements are "merely an adjunct of the protected [work] and promote only

the protected [work]"); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (advertisements of expressive works not actionable); *Brown v. Showtime Networks, Inc.*, 394 F.Supp.3d 418, 439-40 (S.D.N.Y. 2019) (same, applying California law); *Page v. Something Weird Video*, 960 F.Supp. 1438, 1443 (C.D. Cal. 1996) ("Promotional speech may be noncommercial if it advertises an activity itself protected by the First Amendment."); *People v. Fogelson*, 577 P.2d 677, 681 n.7 (Cal. 1978) ("Although 'commercial speech' has not traditionally enjoyed constitutional protection, commercial solicitation or promotion of constitutionally protected ... works is protected as an incident to the First Amendment value of the underlying speech or activity."); *De Havilland v. FX Networks, LLC*, 230 Cal.Rptr.3d 625, 639 (Ct. App. 2018) (the "use of a person's name and likeness to advertise a novel, play, or motion picture concerning that individual is not actionable as an infringement of the right of publicity.").

In a society where dissemination regularly depends on economic incentives, this is the only coherent result. This Court should follow this well-established rule. This Court need not decide whether the protection for ZoomInfo's database would allow it to advertise using a private figure's information generally, without responding to specific search queries about that person. *Cf. New York Magazine v. Metropolitan Transp. Auth.*, 987 F.Supp. 254, 267-68 (S.D.N.Y. 1997), *aff'd in relevant part*, 136 F.3d 123 (2d Cir. 1998) (advertising for magazine could use

17

name of public figure about whom it had run stories in the past, even if magazine was not entirely about public figure). It may well be that advertising to the public about ZoomInfo's service in general is not sufficiently related to its possession of a specific private individual's information to justify the use of that information in non-targeted advertising. But Martinez has not alleged facts indicating that ZoomInfo uses her information in this way, only that it does so in response to searches using her name, and that it does similarly for searches of the names of other people.

## CONCLUSION

The district court wrongly characterized ZoomInfo's speech as unprotected commercial speech. Its reasoning exposes noncommercial speakers to liability simply for using truthful, nondefamatory, nonintimate information. Its ruling should be reversed.

Dated: August 26, 2022

*Respectfully submitted,*

/s/ Mark A. Lemley
Mark A. Lemley
PROFESSOR MARK A. LEMLEY
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605 Telephone
mlemley@law.stanford.edu
*Counsel for Amici Curiae*

# APPENDIX

## List of Signatories[4]

Professor Derek Bambauer
University of Arizona James E. Rogers College of Law

Professor Jane Bambauer
University of Arizona James E. Rogers College of Law

Professor Jorge L. Contreras
University of Utah S.J. Quinney College of Law

Professor Dave Fagundes
University of Houston Law Center

Professor Eric Goldman
Santa Clara University School of Law

Professor James Grimmelmann
Cornell Law School & Cornell Tech

Professor Mark Lemley
Stanford Law School

Professor Yvette Joy Liebesman
Saint Louis University School of Law

Professor Mark P. McKenna
UCLA Law School

Professor Jessica Silbey
Boston University School of Law

Professor Christopher Jon Sprigman
NYU School of Law

---

[4] Institutional affiliations are provided solely for purposes of identification.

Professor Rebecca Tushnet
Harvard Law School

Professor Eugene Volokh
UCLA Law School

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-35305

I am the attorney or self-represented party.

**This brief contains** | 4,112 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Mark A. Lemley | **Date** | August 26, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      21      *Rev. 12/01/2018*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 31, 2022, I caused the foregoing document to be filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Mark A. Lemley
Mark A. Lemley