**No. 22-35305**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIM CARTER MARTINEZ,
*Plaintiff-Appellee*,

v.

ZOOMINFO TECHNOLOGIES INC.,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Washington
No. 3:21-cv-05725
The Honorable Marsha J. Pechman, District Court Judge

**BRIEF OF THE ELECTRONIC PRIVACY INFORMATION CENTER AND PUBLIC JUSTICE AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE**

Megan Iorio
Tom McBrien
ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Ave. NW
Washington, DC 20036
(202) 483-1140
iorio@epic.org

Ellen Noble
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
enoble@publicjustice.net

*Attorneys for* Amici Curiae

November 29, 2022

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, *amici curiae* the Electronic Privacy

Information Center and Public Justice state that they have no parent corporation

and that no publicly held corporation owns 10% or more of its stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................................ i

TABLE OF AUTHORITIES ............................................................................ iii

INTEREST OF THE *AMICI CURIAE* .......................................................................1

SUMMARY OF THE ARGUMENT .......................................................................3

ARGUMENT.......................................................................................................5

    I.    Plaintiff has alleged concrete harms long recognized at common law ..........5

        A.    The privacy harm from misappropriation of one's name and likeness is a cognizable intangible harm long recognized at common law that gives rise to suit without need to show consequential injury. ........................................7

        B.    Misappropriation of one's identity can cause economic harm.............14

    II.    Zoominfo mischaracterizes the privacy harm caused by misappropriation..18

    III.    This Court should not conflate Article III standing analysis with the merits..........................................................................................................21

CONCLUSION....................................................................................................23

CERTIFICATE OF COMPLIANCE..........................................................................24

CERTIFICATE OF SERVICE..................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Yellen*,
34 F.4th 841 (9th Cir. 2022)................................................................21

*Cranor v. 5 Star Nutrition, L.L.C.*,
998 F.3d 686 (5th Cir. 2021)..............................................................16

*Czyzewski v. Jevic Holding Corp*,
580 U.S. 451 (2017) ...........................................................................15

*Doe v. Gangland Prods., Inc.*,
730 F.3d 946 (9th Cir. 2013)..............................................................19

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (1993)........................................................6, 8, 17

*Edison v. Edison Polyform & Mfg.*,
67 A. 392 (N.J. Ch. 1907) .....................................................12, 15, 19

*Fairfield v. Am. Photocopy Equip. Co.*,
138 Cal. App. 2d 82 (1955)...........................................................12, 13

*Fed. Election Comm'n v. Cruz*,
142 S. Ct. 1638 (2022) .......................................................................21

*Foster-Milburn Co. v. Chinn*,
134 Ky. 424 (1909) .............................................................................11

*Gadelhak v. AT&T Servs., Inc.*,
950 F.3d 458 (7th Cir. 2020)..............................................................16

*Golan v. FreeEats.com, Inc.*,
930 F.3d 950 (8th Cir. 2019)..............................................................17

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017)...............................................................16

*Itzkovitch v. Whitaker*,
39 So. 499 (La. 1905).........................................................................12

*KNB Enterprises v. Matthews*,
78 Cal. App. 4th 362 (2000)...............................................................14

*Krakauer v. Dish Network, L.L.C.*,
　925 F.3d 643 (4th Cir. 2019)..................................................................16

*Kunz v. Allen*,
　172 P. 532 (Kan. 1918) .........................................................................12

*Lupia v. Medicredit, Inc.*,
　8 F.4th 1184 (10th Cir. 2021)................................................................16

*Mackenzie v. Soden Mineral Springs Co.*,
　18 N.Y.S. 240 (N.Y. Sup. Ct. 1891) ....................................................10

*McGowan v. Maryland*,
　366 U.S. 420 (1961) ..............................................................................15

*Mey v. Got Warranty, Inc.*,
　193 F. Supp. 3d 641 (N.D.W.Va. 2016) ...............................................15

*Munden v. Harris*,
　134 S.W. 1076 (Mo. Ct. App. 1911).....................................................12

*Pavesich v. New England Life Insurance Co.*,
　50 S.E. 68 (Ga. 1905)............................................................................11

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
　45 F.4th 816 (5th Cir. 2022)..................................................................17

*Roberson v. Rochester Folding-Box Co.*,
　64 N.E. 442 (N.Y. 1902) .......................................................................10

*Roberson v. Rochester Folding-Box Co.*,
　65 N.Y.S. 1109 (Sup. Ct. 1900)............................................................10

*Sarver v. Chartier*,
　813 F.3d 891 (9th Cir. 2016).................................................................17

*Schuyler v. Curtis*,
　15 N.Y.S. 787 (Sup. Ct. 1891) ..............................................................10

*Schuyler v. Curtis*,
　42 N.E. 22 (N.Y. 1895) ....................................................................10, 11

*Slivinsky v. Watkins-Johnson Co.*,
　221 Cal. App. 3d 799 (1990).................................................................18

*Transunion v. Ramirez*,
　141 S.Ct. 2190 (2021) ..................................................................... passim

*United States v. JP Morgan Chase Bank Acct. No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*,
835 F.3d 1159 (9th Cir. 2016).......................................................................22

*Warth v. Seldin*,
422 U.S. 490 (1975) ......................................................................................21

*White v. Samsung Electronics America*,
971 F.2d 1395 (9th Cir. 1992)..................................................................15, 19

*Zacchini v. Scripps-Howard Broadcasting*,
433 U.S. 562 (1977) ................................................................................14, 19

**Other Authorities**

Danielle Keats Citron & Daniel J. Solove, *Privacy Harms*, 102 Boston U. L. Rev. 793 (2021) ................................................................................................6, 9

Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. Rev. 962 (1964) ...............................................9, 10

Jennifer Rothman, The Right to Publicity (2018) .......................................6, 7, 8, 9

Mark Roesler & Garrett Hutchinson, *What's in a Name, Likeness, and Image? The Case for a Federal Right of Publicity Law*, Landslide (September 2020)....12

Restatement (Second) of Torts § 652C (1977).........................................................5

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harvard L. Rev. 193 (1890) ...............................................................................................7, 8, 9

**INTEREST OF THE *AMICI CURIAE***

EPIC is a public interest research center in Washington, D.C. that focuses public attention on emerging privacy and technology issues.[1] EPIC regularly participates as *amicus* to support plaintiffs' standing to sue for invasion of their privacy rights. *See, e.g.*, Brief for EPIC as *Amicus Curiae* Supporting Respondent, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2016) (No. 13-1339); Brief for EPIC et al. as *Amici Curiae* Supporting Respondent, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (No. 13-1339); Brief for EPIC as *Amicus Curiae* Supporting Plaintiffs-Appellees, *Patel v. Facebook, Inc.*, 923 F.3d 1264 (9th Cir. 2019) (arguing that violations of the Illinois Biometric Information Privacy Act confer standing). EPIC has also litigated Article III standing in the D.C. Circuit. *See EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 401–02 (D.C. Cir. 2017); *EPIC v. Dep't of Commerce*, 928 F.3d 95, 103–04 (D.C. Cir. 2019).

Public Justice is a nonprofit legal advocacy organization that specializes in precedent-setting, socially significant civil litigation, with a focus on fighting corporate and governmental misconduct. The organization maintains an Access to

---

[1] In accordance with Rule 29, the undersigned states that no monetary contributions were made for the preparation or submission of this brief, and this brief was not authored, in whole or in part, by counsel for a party. Both parties consent to the filing of this *amicus* brief.

Justice Project that pursues litigation and advocacy efforts to remove procedural obstacles that unduly restrict the ability of workers, consumers, and people whose civil rights have been violated to seek redress in the civil court system. This case is of interest to Public Justice because it raises questions regarding Article III standing which affect the ability of injured persons to seek remedies through the civil justice system. Public Justice has litigated dozens of cases in federal and state courts fighting for proper interpretations of Article III standing in the context of data privacy, fair lending, discriminatory business practices, and false advertising.

# SUMMARY OF THE ARGUMENT

Under *Transunion v. Ramirez*, 141 S.Ct. 2190 (2021), a plaintiff that can point to a common law analogue to the harm they have allegedly suffered has adequately alleged a concrete harm for Article III standing purposes. In this case, there is no need to search far and wide for a common law analogue, for the actual causes of action are a common law right and its codification in a California statute. When a plaintiff alleges a violation of a common law right and its codification, there should be no question that the plaintiff has standing. ZoomInfo's real quibble is with the applicability of the law in these circumstances and plaintiff's characterization of the teaser profile as an advertisement, not with plaintiff's standing to bring a suit for misappropriation.

Misappropriation is one of the four foundational privacy torts with roots in the nineteenth century. From the beginning, the primary interest protected by the common law right was privacy. Misappropriation harmed the person's interest in controlling the information most essential to who they are: their name and likeness. Courts and commentators recognized that when a person's name and likeness are used to sell goods or services without the person's consent, their dignity and autonomy is inherently harmed. As the common law right developed, courts also recognized other harms that the right protected against, such as reputational harm, emotional harm, and economic harm. The plaintiff in this case alleges privacy and

economic harms stemming from defendant's invasion of their common law and statutory rights against the misappropriation of their name and likeness. That is all that Article III requires.

ZoomInfo's argument that there is no privacy harm in this case rests on a mischaracterization of the privacy interests at stake in a misappropriation case. It does not matter whether the information was secret or sensitive, accurate or misleading. It does not matter how the plaintiff or anyone else has used the information in question. All that matters is that Ms. Martinez alleges that ZoomInfo used her information to drive customers to ZoomInfo's website and to its subscription services without Ms. Martinez's consent. These allegations establish that ZoomInfo harmed Ms. Martinez's dignity and autonomy.

ZoomInfo's argument also confuses the standing inquiry with the merits. ZoomInfo essentially argues that plaintiff is not harmed because ZoomInfo's use of plaintiff's information is not an advertisement. But whether ZoomInfo used plaintiff's information in a way that violates the statute is a merits question, not a standing question. Questions about who accessed plaintiff's teaser profile and the specific value of plaintiff's name and likeness are also inappropriate to consider as part of the standing inquiry or at the motion to dismiss stage.

**ARGUMENT**

## I. PLAINTIFF HAS ALLEGED CONCRETE HARMS LONG RECOGNIZED AT COMMON LAW

In *TransUnion v. Ramirez*, the Supreme Court explained that a plaintiff may allege a concrete injury by alleging "traditional tangible harms, such as physical harms or monetary harms," or, alternatively, by alleging "intangible harms . . . with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." 141 S. Ct. 2190, 2204 (2021). The latter inquiry hinges on "whether plaintiffs have identified a close historical or common law analogue for their asserted injury." *Id.*

Ms. Martinez has clearly identified a close common law analogue to her asserted injuries. Ms. Martinez alleges that ZoomInfo committed the tort of misappropriation and violated the same right as codified in California's right of publicity statute. Misappropriation of name and likeness—also known as the right of publicity—is one of the four foundational privacy torts with roots in the nineteenth century. This common law cause of action protects against the harm caused when someone "appropriates to [their] own use or benefit the name or likeness of another." Restatement (Second) of Torts § 652C (1977). Violation of the right results in an "invasion of [the person's] privacy." *Id.* Using somebody's identity without their consent to sell goods is an affront to their dignity and autonomy

5

because it violates their ability to control their personal identity. The harm is often manifested as a person's wish "to be left alone," is "mental and subjective," and impacts their "feelings" and "peace of mind." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993); *see also* Danielle Keats Citron & Daniel J. Solove, *Privacy Harms*, 102 Boston U. L. Rev. 793, 853 (2021) (describing the loss-of-control autonomy harm as "an injury to our peace of mind."). This intangible harm necessarily follows from violation of the right, just as a reputational harm follows from defamation or a property harm flows from trespass on land. There is no need to plead further facts.

Ms. Martinez has also alleged traditional tangible harms stemming from her economic interest in the exploitation of her persona. While an economic harm need not follow from violation of a person's right against misappropriation, pleading such a harm provides an independent basis for standing.[2]

---

[2] Some courts describe misappropriation as having "two aspects:" the privacy right, which protects a person's dignity and autonomy interests, and the property right, which protects against unjust enrichment and other economic harms caused by the commercial appropriation of a person's identity. *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 541–42 (1993). But these are not two different rights; they are two different harms caused by the violation of the same right. There is but one right against misappropriation. Violation of the right causes a privacy harm and can also result in other harms, such as economic, emotional, and reputational harms. *See* Jennifer Rothman, The Right to Publicity 33, 110 (2018).

**A. The privacy harm from misappropriation of one's name and likeness is a cognizable intangible harm long recognized at common law that gives rise to suit without need to show consequential injury.**

The privacy harm caused by misappropriation of one's name or likeness is an intrinsic harm, cognizable even when there is no additional pecuniary, emotional, or physical injury. Misappropriation doesn't just have a "close relationship to [a] harm[] traditionally recognized as providing a basis for lawsuits in American courts," *TransUnion v. Ramirez,* 141 S. Ct. 2190, 2204 (2021), it is *itself* a traditional basis for lawsuit in American courts. Just like disclosure of private information and intrusion upon seclusion, which are explicitly mentioned in *TransUnion* as privacy actions that cause cognizable intangible harm, *id.*, misappropriation is a foundational privacy tort. When California codified the right of publicity, it created a statutory right that, when violated, causes the same privacy harm as the tort of misappropriation.

The tort of misappropriation was first recognized in the nineteenth century. As camera and printing technology developed, people became increasingly concerned about the unauthorized circulation of photographs. Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harvard L. Rev. 193, 195 (1890). An early line of cases concerned photographs taken with the consent of the subject but then circulated and used more widely than the subject authorized. *Id.* at 208; *see also* Jennifer Rothman, The Right to Publicity 17 (2018). These cases could be resolved

on breach of trust or contract. Warren & Brandeis, *supra*, at 208. But when there was no prior relationship between photographer and subject, such as in the case of surreptitious photography, there could be no breach of trust or contract, but there was still harm. *Id.* at 211.

People were surprised, ashamed, and shocked when their images appeared in public—particularly in advertisements—without their consent. Rothman, *supra*, at 13. One "somewhat notorious case" of the time illustrates the public and legal sentiment. Warren & Brandeis, *supra*, at 195. In *Manola v. Stevens & Myers*, actress Marion Manola objected to a theater manager using a photograph taken of her mid-performance to advertise the show. Rothman, *supra*, at 20. Manola herself explained that the harm was not emotional—she was not "prudish"—but she did not want her daughter to see her in such photos in public. *Id.* Public sentiment supported Manola: "The Baltimore Sun described Manola's claim as central to the 'sacredness of the person' and the 'rights of the individual [as] unquestionable in such a case.'" *Id.* at 21.

In their seminal article *The Right to Privacy*, Samuel Warren and Louis Brandeis reasoned that the injury in all of these cases was to a person's privacy, their "right to be let alone." Warren & Brandeis, *supra*, at 205; *compare Dora*, 15 Cal. App. 4th at 542 (recognizing a wish "to be left alone" in a misappropriation case as the manifestation of a privacy harm). They explained that "modern enterprise and

invention have, through invasions upon his privacy, subjected [people] to mental pain and distress, far greater than could be inflicted by mere bodily injury." Warren & Brandeis, *supra*, at 196. According to Warren and Brandeis, a person suing to vindicate their privacy right should be able to limit publication of their name and likeness not as a "principle of private property," but as a principle "of inviolate personality." *Id*.

This history shows that the harm inherent in the tort of misappropriation is one rooted in a person's dignity and autonomy. The harm to autonomy is "the undermining of control over the extent to which personal information is circulated." Citron & Solove, *supra*, at 854. A person's identity is precious; they have a right to control how it is used. A violation of this right is similar to having one's speech compelled or liberty restricted: it represents a trespass against a person's control over a deeply personal aspect of their identity, their "inviolate personality." *See* Rothman, *supra*, at 111. In the misappropriation context, a person's dignity is violated when another person uses their identity to sell goods or services. Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. Rev. 962, 987–88 (1964). As scholar Edward Bloustein wrote:

> [U]sing a person's name or likeness for a commercial purpose without consent is a wrongful exercise of dominion over another even though there is no subjective sense of having been wronged, even, in fact, if the wrong was subjectively appreciated, and even though a commercial profit might accrue as a result. This is so because the wrong involved is

> the objective diminution of personal freedom rather than the infliction of personal suffering or the misappropriation of property.

*Id.* at 990.

Soon after *The Right to Privacy* was published, courts began to recognize the common law right against misappropriation and the specific harms that it protected against. In New York, lower courts in two cases, *Schuyler v. Curtis* and *Roberson v. Rochester Folding-Box Co.*, recognized a right against misappropriation when women's likenesses were used for a statue (*Schuyler*) and an advertisement (*Roberson*) without their consent. *See Roberson v. Rochester Folding-Box Co.*, 65 N.Y.S. 1109 (Sup. Ct. 1900); *Schuyler v. Curtis*, 15 N.Y.S. 787 (Sup. Ct. 1891); *see also Mackenzie v. Soden Mineral Springs Co.*, 18 N.Y.S. 240, 249 (N.Y. Sup. Ct. 1891) (recognizing appropriation of doctor's signature to advertise a medicine caused "damage to his professional standing and income as a physician, *and an infringement of his right to the sole use of his name*") (emphasis added). Both *Schuyler* and *Roberson* were reversed by the state's highest court, *Roberson v. Rochester Folding-Box Co.*, 64 N.E. 442 (N.Y. 1902); *Schuyler v. Curtis*, 42 N.E. 22 (N.Y. 1895), but not without dissents from Judge John Clinton Gray, who echoed Warren and Brandeis when he described the nonconsensual use of someone's likeness to market products as an "act of invasion of the individual's privacy . . . possibly more formidable and more painful in its consequences than an actual bodily

assault might be." *Roberson*, 64 N. E. at 450 (Gray, J., dissenting); *see also Schuyler*, 42 N.E. at 27–29 (Gray, J., dissenting). Public outrage at the decision in *Roberson* led the New York State legislature to enact a right to privacy statute, codifying the right of publicity. Rothman, *supra*, at 25; *see* Civil Rights Law, ch. 6, §§ 50–51, 1909 N.Y. Laws 317.

A few years after *Roberson*, the Georgia Supreme Court became the first state supreme court to recognize the tort of misappropriation. In *Pavesich v. New England Life Insurance Co.*, 50 S.E. 68, 68 (Ga. 1905), an insurance company used a photo of the plaintiff in an advertisement. Even though the photo was presented in a flattering context that may have even *added* value to plaintiff's likeness, the court recognized that the plaintiff had a cognizable legal claim because the harm was in the plaintiff's loss of control, not in downstream economic injuries. The court reasoned that "the body of a person cannot be put on exhibition . . . without his consent. The right of one to exhibit himself to the public at all proper times, in all proper places, and in a proper manner is embraced within the right of personal liberty." *Id.* In the court's words, nonconsensual use of a person's photograph for commercial purposes harms a person because "his liberty has been taken away from him" and "he is no longer free." *Id.* at 80. In 1909, Kentucky's highest court followed Georgia's lead. *See Foster-Milburn Co. v. Chinn*, 134 Ky. 424 (1909) (appropriation of a person's likeness is an injury that "entitles him to recover without proof of

11

special damages"). Several more states soon followed. *See Munden v. Harris*, 134 S.W. 1076, 1079 (Mo. Ct. App. 1911); *Itzkovitch v. Whitaker*, 39 So. 499 (La. 1905); *Edison v. Edison Polyform & Mfg.*, 67 A. 392 (N.J. Ch. 1907); *Kunz v. Allen*, 172 P. 532 (Kan. 1918). Now, 35 states recognize the right of publicity: 24 by statute, 22 by common law, and 13 by a combination of the two. Mark Roesler & Garrett Hutchinson, *What's in a Name, Likeness, and Image? The Case for a Federal Right of Publicity Law*, Landslide (September 2020).[3]

California courts have recognized that misappropriation protects against a privacy harm and that invasion of the right establishes injury without any additional showing of harm. Misappropriation impacts "one's own piece of mind" and "may cause suffering much more acute than that caused by a bodily injury." *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 2d 82, 86–87 (1955) (citations omitted). The privacy harm caused by misappropriation is "a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community." *Id*. at 86 (citations omitted). "In a case of this

---

[3] https://www.americanbar.org/groups/intellectual_property_law/publications/landslide/2020-21/september-october/what-s-in-a-name-likeness-image-case-for-federal-right-of-publicity-law/.

character there can be no direct evidence of the amount of damages sustained, nor the amount of money which will compensate for the injury." *Id.* at 88.

The intangible privacy harm that follows from a misappropriation of a person's name or likeness is just as old and concrete as the harms caused by the privacy torts that the Supreme Court explicitly stated confer standing in *TransUnion*. *See Transunion*, 141 S. Ct. at 2204 (listing intrusion upon seclusion and disclosure of private facts as protecting against concrete harm). If a plaintiff pleads that defendant committed misappropriation, they have adequately plead standing.

With standing under the common law right established, it is but a small step to recognize that the codification of the right also protects against a concrete harm. The legislature "may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo v. Robins*, 578 U. S. 330, 341 (2016)). The Court's "simple instruction" in assessing Article III standing is to "see if a new harm is similar to an old harm." *Id*. at 931. While *TransUnion* may require a searching inquiry for *new* harms, the harm protected against in a statute that codifies a common law right is not *new*: it is as old as the common law right itself. Even if the codification lacks a certain element of the original claim, such a change is within the legislative power. Nothing in *TransUnion* requires plaintiffs to satisfy every element of a common law cause of action. Plaintiffs are only tasked with identifying a common law analogue

for "the asserted harm" and not for the cause of action. *TransUnion*, 141 S. Ct. at 2200. The harm in a misappropriation case is independent of any ability to show actual damages. That is precisely why the California legislature included a statutory damages provision in its right of publicity statute. *See KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 367 (2000).

**B. Misappropriation of one's identity can cause economic harm.**

While the right of publicity fashioned by Warren and Brandeis protected against a privacy harm, not a property harm, over the decades, the right has also been cast as protecting a person's interest in their name and likeness as intellectual property. The privacy harm inherent to misappropriation is sufficient to confer standing, but any economic harm can form an additional, independent basis for standing.

In the only case in which the Supreme Court addressed the right of publicity, *Zacchini v. Scripps-Howard Broadcasting*, the Court recognized the right as a quasi-intellectual-property right strong enough to even surmount newsgatherers' First Amendment objections in certain circumstances. *See* 433 U.S. 562, 573 (1977). The Court, weighing the state's interest in a First Amendment analysis, described "the State's interest is . . . in protecting the proprietary interest of the individual in his act in part to encourage such entertainment" and drew parallels to copyright and patent regimes. *Id.* Other courts before and after have also found cognizable economic harm

based on a quasi-IP view of the right of publicity. *See, e.g.*, *White v. Samsung Electronics America*, 971 F.2d 1395, 1398 (9th Cir. 1992) (claiming that the thing uniting most appropriation cases together is "the commercial interests which the right of publicity is designed to protect"); *Edison v. Edison Polyform & Mfg.*, 67 A. 392 (N.J. 1907) (holding that an inventor's name and likeness was a form of personal property).

While the value of a person's information may be small, a small amount of economic harm is still harm. Courts have consistently held that small amounts of economic harm still confer Article III standing. *See, e.g.*, *Czyzewski v. Jevic Holding Corp*, 580 U.S. 451, 462 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *McGowan v. Maryland,* 366 U.S. 420, 430–431 (1961) (finding that appellants fined $5 plus costs had standing to assert an Establishment Clause challenge). For example, in a Telephone Consumer Privacy Act ("TCPA") case, a court found cognizable harm where TCPA-violating phone calls "deplet[e] limited minutes that the consumer has paid for" and "deplete a cell phone's battery" because "the cost of electricity to recharge the phone" is also a tangible harm. *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 644–45 (N.D.W.Va. 2016).

Nothing in *TransUnion* requires plaintiffs to demonstrate the degree of harm that would be actionable at common law—they need only identify a harm similar in

*kind*, not degree. A court's concreteness inquiry should be "focused on types of harms protected at common law, not the precise point at which those harms become actionable." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 693 (5th Cir. 2021); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (same); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 639 (3d Cir. 2017) (holding that although the unauthorized dissemination of personal information in violation of the Fair Credit Reporting Act would not "give rise to a cause of action under common law," it still has a "close relationship" to common law privacy harms). Now-Justice Barrett has explained that "when *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a 'close relationship' in kind, not degree." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.), *cert. denied*, 141 S. Ct. 2552 (2021) (cited favorably in *TransUnion*).

Other circuit courts have similarly held that the injury need only be similar in kind, not degree. For example, in a post-*TransUnion* decision, the Tenth Circuit held that a single debt collection phone call in violation of the FDCPA was a concrete injury because although it did "not intrude to the degree required at common law, that phone call poses the same kind of harm recognized at common law." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (analogizing TCPA injury to

16

common law privacy harm but refusing to consider "how long party was on the line or how irritated it felt when the phone rang"); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022) (noting "plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common law cause of action"); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (holding it does not "matter that the harm suffered here was minimal" because "in the standing analysis we consider the nature or type of the harm, not its extent").

ZoomInfo argues that a plaintiff has not alleged an economic injury if they have not specified the dollar value of their identity, but none of the sources ZoomInfo cites support that argument. ZoomInfo states that "the mere use of a plaintiff's name or likeness has not traditionally provided the basis for a lawsuit," Op. Br. 27, citing a quotation from *Dora v. Frontline Video* that says, "[E]very publication of someone's name or likeness does not give rise to an appropriation action." *Dora*, 15 Cal. App. 4th at 542. But that quotation refers to First Amendment defenses prevailing over misappropriation claims at the merits stage, not about standing or economic harm. *See id.* ZoomInfo then cites two cases that do not support its economic injury and standing argument. *Sarver v. Chartier* simply lays out the elements of the misappropriation tort without commenting on whether a court can infer economic loss. 813 F.3d 891, 896 (9th Cir. 2016). *Slivinsky v. Watkins-Johnson*

17

*Co.* merely repeats that injury is required and expressly approves of the type of privacy and emotional injuries that Ms. Martinez claims here. 221 Cal. App. 3d 799, 807 (1990). Finally, the comment in Restatement (Second) of Torts that ZoomInfo refers to is about impersonation, not the use of a name in an advertisement, so it is irrelevant to this case. The comment has also been deleted from subsequent versions of the Restatement.

## II. ZOOMINFO MISCHARACTERIZES THE PRIVACY HARM CAUSED BY MISAPPROPRIATION.

ZoomInfo's argument that there is no cognizable harm in this case rests on a mischaracterization of the privacy interests at stake in a misappropriation case. The tort of appropriation protects people from having their identities coopted for others' material gain. *See supra* Section I. This leads to tangible and intangible harms. *See id.* Other privacy torts such as the tort of public disclosure of private facts protect against different (if related) harms. ZoomInfo argues that because Ms. Martinez fails to allege elements of other privacy torts, she fails to allege any concrete harm at all. Op. Br. 21–22. But Ms. Martinez need only allege that ZoomInfo harmed the interests protected by the right against misappropriation, not any other privacy tort.

For example, ZoomInfo faults Ms. Martinez for not alleging that her personal information is "secret, sensitive, or not otherwise publicly available." Op. Br. 22. It also claims that Ms. Martinez does not have a privacy interest in ZoomInfo's use of

her information because she and her employer share the same information over the internet. Op. Br. 32. But these are requirements of the public disclosure of private facts tort, not of the misappropriation tort. *See Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 958 (9th Cir. 2013) (citing *Shulman v. Grp. W Prods., Inc.*, 18 Cal.4th 200, 214 (1998)). In fact, most misappropriation cases involve non-secret information that plaintiffs disclosed themselves and was subsequently appropriated by the defendant. *E.g.*, *Zacchini v. Scripps-Howard Broadcasting*, 433 U.S. 562 (1977) (concerning a man's public performance of being shot out of a cannon); *White v. Samsung Electronics America*, 971 F.2d 1395 (9th Cir. 1992) (concerning famed television host Vanna White's likeness); *Edison v. Edison Polyform & Mfg. Co.*, 67 A. 392 (N.J. 1907) (concerning Thomas Edison's name). In all of these cases, the plaintiffs themselves were happy to disclose their likeness *because it was theirs to disclose*—their disclosure did not permit any third party to commercialize their likeness without consent.

Similarly, ZoomInfo quotes *TransUnion* to fault Ms. Martinez's complaint for not alleging concrete injuries such as "reputational harms, disclosure of private information, and intrusion upon seclusion." Op. Br. 22, 31–32. But the quoted list is illustrative, not exhaustive; a plaintiff does not need plead these specific privacy harms to establish standing. *See Transunion*, 141 S. Ct. at 2204. ZoomInfo omitted parts of the quotation that made that clear: "Chief among [concrete intangible harms]

are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, *for example*, reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* (internal citations omitted) (emphasis added). Misappropriation of one's likeness, a tort as established as the disclosure of private information and intrusion upon seclusion, has clearly been recognized as providing a basis for lawsuits in American courts. *See supra* Section I.A.

ZoomInfo also argues that Ms. Martinez has not alleged an actual or imminent injury because she does not allege that any particular person has viewed or will imminently view the teaser profile that uses Ms. Martinez' name and information to solicit subscriptions. *See* Op. Br. 35–38. More specifically, ZoomInfo argues that Ms. Martinez is no different than the plaintiffs in *TransUnion* that failed to demonstrate that TransUnion had disseminated their credit reports to third parties. Op. Br. 37. But the Court found that the plaintiffs in *TransUnion* had to show that the harm they suffered was sufficiently analogous to the harm caused by *defamation,* not misappropriation. Further, it is undisputed that Ms. Martinez's teaser profile *has* been published on the Internet and can be viewed by anyone. The use of Ms. Martinez's name and likeness in an online advertisement, accessible to anyone, is no different than the use of a person's name and likeness in a yellow pages

advertisement that is available to anyone that looks up certain peoples' phone numbers on a particular page.

Even if Ms. Martinez had to prove that someone other than herself and her lawyers viewed her ZoomInfo teaser profile, she could not do so without discovery. The only facts that could establish how many people viewed Ms. Martinez's teaser profile reside—if they exist at all—on ZoomInfo's servers, such as the dates, times, and IP addresses of the computers that requested and received the page. It would thus be inappropriate for the court to consider this question at this stage of the litigation.

## III. THIS COURT SHOULD NOT CONFLATE ARTICLE III STANDING ANALYSIS WITH THE MERITS.

This Court "should be cautious not to confuse any perceived 'weakness on the merits with absence of Article III standing.'" *Arizona v. Yellen*, 34 F.4th 841, 853 (9th Cir. 2022) (quoting *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015)). As the Supreme Court has repeatedly warned, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "For standing purposes, we accept as valid the merits of appellees' legal claims." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022).

Therefore, when assessing whether Ms. Martinez has Article III standing to bring this action, the Court should assume that Ms. Martinez has a legal right to not have her name and likeness used in an advertisement for a ZoomInfo subscription. The only question is whether Ms. Martinez has adequately alleged that ZoomInfo's invasion of her right against appropriation of her name and likeness resulted in a concrete injury. *Cf. United States v. JP Morgan Chase Bank Acct. No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1166 n.7 (9th Cir. 2016) ("For standing inquiries, the guiding question is whether the claimant would be injured through the seizure of the property, even assuming arguendo that the property was wrongfully seized.").

Many of the defendants' standing arguments are really merits arguments. If this Court concludes that Ms. Martinez has no right to control the use of her name or likeness when it is otherwise publicly available on the Internet or because it is information of public interest, then it should dismiss the case for failure to state a claim, not for lack of Article III standing. Similarly, if the Court concludes that ZoomInfo's speech is protected by the First Amendment, that may be a reason plaintiff loses on the merits, but it does not erase the fact that plaintiff has alleged a concrete *harm* similar in kind to a *harm* cognizable at common law. The same goes for arguments that ZoomInfo was not advertising but instead acting like a service directory. Separating the merits questions from the core Article III standing inquiry

is necessary to ensure Article III standing is properly cabined, enabling other plaintiffs—with different claims in different circumstances—to have their cases properly adjudicated.

## CONCLUSION

For the foregoing reasons, *amici* respectfully urge the Court to affirm the District Court's finding that Plaintiff has satisfied Article III's standing requirements.

**Date:** November 29, 2022

/s/ Megan Iorio
Megan Iorio
Tom McBrien
ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Ave. NW
Washington, DC 20036
(202) 483-1140
iorio@epic.org

Ellen Noble
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
enoble@publicjustice.net

*Attorneys for Amici Curiae*
*Electronic Privacy Information Center*
*& Public Justice*

# CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party.

**This brief contains 5294 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Megan Iorio*         **Date:** November 29, 2022

# CERTIFICATE OF SERVICE

I certify that on November 29, 2022, this brief was e-filed through the CM/ECF System of the U.S. Court of Appeals for the Ninth Circuit. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**Date:** November 29, 2022          /s/ Megan Iorio
Megan Iorio
Tom McBrien
ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Ave. NW
Washington, DC 20036
(202) 483-1140
iorio@epic.org

Ellen Noble
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
enoble@publicjustice.net

*Attorneys for Amici Curiae*
*Electronic Privacy Information Center*
*& Public Justice*