**No. 22-35305**

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

KIM CARTER MARTINEZ,

*Plaintiff-Appellee,*

v.

ZOOMINFO TECHNOLOGIES INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the Western District of Washington
District Judge Marsha J. Pechman, No. 3:21-cv-05725-MJP-BNW

---

### REPLY BRIEF FOR DEFENDANT-APPELLANT
### ZOOMINFO TECHNOLOGIES INC.

---

Jeffrey A. Lamken
Lucas M. Walker
Lauren M. Weinstein
Jennifer E. Fischell
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)

Shon Morgan
   *Counsel of Record*
Daniel C. Posner
John W. Baumann
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000 (telephone)
shonmorgan@quinnemanuel.com

*Counsel for ZoomInfo Technologies Inc.*

*(Additional Counsel Listed on Inside Cover)*

Eugene A. Sokoloff
Jordan A. Rice
Kenneth E. Notter III
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL  60654
(312) 450-6700 (telephone)
(312) 450-6701 (facsimile)

Alexandra C. Eynon
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

Cristina Henriquez
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065
(650) 801-5000 (telephone)

*Counsel for ZoomInfo Technologies Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellant ZoomInfo Technologies Inc. states under Federal Rule of Appellate Procedure 26.1 that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Plaintiff Lacks Article III Standing ................................................2

    A.    This Court Not Only May, But Must, Consider Plaintiff's Lack of Standing ...............................................................3

    B.    Plaintiff Alleges No Concrete Injury ...................................4

        1.    Plaintiff Fails To Plead Concrete Economic Harm ...................4

        2.    Plaintiff Fails To Plead Concrete Mental Injury........................8

        3.    Bare Statutory Violations Do Not Constitute Concrete Injury ........................................................9

    C.    Plaintiff Lacks Actual or Imminent Injury.........................................11

II.    California's Anti-SLAPP Statute Requires Dismissal .................................14

    A.    Plaintiff's Efforts To Evade the Merits Fail .......................................14

    B.    ZoomInfo's Speech Is Entitled to Anti-SLAPP Protections...............15

        1.    ZoomInfo's Directory and Preview Profiles Are Speech in Connection with a Public Issue.............................................16

        2.    Plaintiff's Preview Profile Concerns Public Issues Involving Public-Sector Unions' Political Activities ..............21

        3.    ZoomInfo's Speech Is Not "Commercial".................................22

    C.    Plaintiff Cannot Evade Anti-SLAPP Safeguards................................22

    D.    Plaintiff Fails To State a Viable Misappropriation Claim in View of First Amendment and California Law Protections ..............25

CONCLUSION ....................................................................30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ......................................................28, 29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 8

*Barker v. Avila*,
  No. 2:09-cv-00001-GEB-JFM, 2009 WL 10691367
  (E.D. Cal. Nov. 19, 2009) ....................................................................25

*Barrett v. Rosenthal*,
  40 Cal. 4th 33 (2006) .......................................................................16

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) .........................................................3, 14

*Blackburn v. ABC Legal Servs., Inc.*,
  No. 11-cv-01298-JSW, 2011 WL 8609453 (N.D. Cal. June 16, 2011) ............25

*Breazeale v. Victim Servs., Inc.*,
  878 F.3d 759 (9th Cir. 2017) .............................................................15

*Cassirer v. Kingdom of Spain*,
  580 F.3d 1048 (9th Cir. 2009) ..............................................................4

*Charles v. City of Los Angeles*,
  697 F.3d 1146 (9th Cir. 2012) .................................................27, 28, 29

*Cher v. Forum Int'l, Ltd.*,
  692 F.2d 634 (9th Cir. 1982) .......................................................28, 29

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..........................................................................12

*Clem v. Lomeli*,
  566 F.3d 1177 (9th Cir. 2009) ..............................................................6

*Club Members for an Honest Election v. Sierra Club*,
45 Cal. 4th 309 (2008) ..................................................................24, 25

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975)......................................................................16, 20

*Davis v. Avvo, Inc.*,
No. 11-cv-1571-RSM, 2012 WL 1067640
(W.D. Wash. Mar. 28, 2012) ........................................................17, 18

*Davis v. Cox*,
183 Wash. 2d 269 (2015)...................................................................18

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ..............................................................7

*DC Comics v. Pacific Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ..........................................................14

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) .....................................................*passim*

*Ellis v. Dun & Bradstreet*,
No. 18-cv-10077-MRW, 2019 WL 8017821
(C.D. Cal. Nov. 20, 2019)............................................................17, 18

*Eng v. Cooley*,
552 F.3d 1062 (9th Cir. 2009) .............................................................3

*Exeltis USA Inc. v. First Databank, Inc.*,
No. 17-cv-04810-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017).......17, 18

*FilmOn.com Inc v. DoubleVerify Inc.*,
7 Cal. 5th 133 (2019) ................................................................*passim*

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) ..............................................................28

*Guglielmi v. Spelling-Goldberg Prods.*,
25 Cal. 3d 860 (1979) ........................................................................28

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) .........................................................3, 23

iv

*Ingels v. Westwood One Broad. Servs., Inc.*,
129 Cal. App. 4th 1050 (2005) ............................................................24

*JAMS, Inc. v. Superior Court*,
1 Cal. App. 5th 984 (2016) ................................................................24

*Janus v. AFSCME, Council 31*,
138 S. Ct. 2448 (2018) ......................................................................21

*Jordan-Benel v. Universal City Studios, Inc.*,
859 F.3d 1184 (9th Cir. 2017) ...........................................................23

*Kronemyer v. Internet Movie Database Inc.*,
150 Cal. App. 4th 941 (2007) .......................................................17, 18

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ...............................................................3

*Melvin v. Reid*,
112 Cal. App. 285 (1931) ...................................................................11

*Montana v. San Jose Mercury News, Inc.*,
34 Cal. App. 4th 790 (1995) ........................................................26, 28

*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
498 F.2d 821 (9th Cir. 1974) ...............................................................8

*New Kids on the Block v. News Am. Publ'g, Inc.*,
971 F.2d 302 (9th Cir. 1992) .............................................................27

*Nygard, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027 (2008) .....................................................16, 18

*Ojogwu v. Rodenburg Law Firm*,
26 F.4th 457 (8th Cir. 2022) ................................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) .............25, 26

*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ...........................................................4

*Rux v. Republic of Sudan*,
    461 F.3d 461 (4th Cir. 2006) ................................................................4

*Safari Club Int'l v. Rudolph*,
    862 F.3d 1113 (9th Cir. 2017) ............................................................3

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ............................................................23

*Schwarzburd v. Kensington Police Prot. & Cmty. Servs. Dist. Bd.*,
    225 Cal. App. 4th 1345 (2014) ........................................................25

*Sierra Nat'l Ins. Holdings, Inc. v. Credit Lyonnais S.A.*,
    64 F. App'x 6 (9th Cir. 2003) ............................................................4

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ............................................................7

*Simpson Strong-Tie Co. v. Gore*,
    49 Cal. 4th 12 (2010) ......................................................................24

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007).........................................................................4

*Slivinsky v. Watkins-Johnson Co.*,
    221 Cal. App. 3d 799 (1990) ..........................................................10

*Smith v. Levine Leichtman Capital Partners, Inc.*,
    723 F. Supp. 2d 1205 (N.D. Cal. 2010)..........................................25

*Snyder v. Phelps*,
    562 U.S. 443 (2011).................................................................16, 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................4

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)...........................................................................3

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)...................................................9, 10, 12, 13

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
529 U.S. 765 (2000) ................................................................. 3

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016) ............................... 17, 18

*Will v. Hallock*,
546 U.S. 345 (2006) ............................................................... 14

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III ......................................................... *passim*

U.S. Const. amend. I ...................................................... *passim*

## STATUTES AND RULES

28 U.S.C. § 1291 ................................................................... 14

29 U.S.C. § 431(b)(3) ........................................................... 21

29 U.S.C. § 435(a) ................................................................ 21

Cal. Civ. Code § 3344 ............................................................ 9

California Anti-SLAPP Act, Cal. Civ. Proc. Code § 425.16 ........................ *passim*

    Cal. Civ. Proc. Code § 425.16 ........................................ 14

    Cal. Civ. Proc. Code § 425.16(a) .................................... 16

    Cal. Civ. Proc. Code § 425.16(b)(1) ....................... 15, 16, 20

    Cal. Civ. Proc. Code § 425.16(e)(3) ........................... 15, 18

    Cal. Civ. Proc. Code § 425.16(e)(4) ................................ 15

Cal. Civ. Proc. Code § 425.17 ............................................ 15

Cal. Civ. Proc. Code § 425.17(b) ................................ 23, 24, 25

Cal. Civ. Proc. Code § 425.17(c) .................................. 23, 24

Cal. Civ. Proc. Code § 425.17(e) ........................................ 15

Fed. R. Civ. P. 8 ...................................................................................8

Fed. R. Civ. P. 12(b)(6)..................................................................25, 26

Ninth Circuit Rule 36-3(c) .................................................................4

## OTHER AUTHORITIES

J. McCarthy, *McCarthy on Trademarks and Unfair Competition*
   (5th ed. rev. 2022)..........................................................................9

There is no dispute that ZoomInfo offers accurate information about professionals: If a member of the public makes a query about a specific person, ZoomInfo provides a preview profile with accurate data, while offering access to more information in a comprehensive directory. Plaintiff cannot dispute that the information provided is truthful, non-scandalous, and professional in nature. She nowhere denies that directories of this sort have been staples of public life since phonebooks were ubiquitous. And plaintiff cannot dispute that such directories are "entitled to the full protection of the First Amendment." *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012).

Plaintiff urges that providing preview profiles, and links directing users to ZoomInfo's broader directory, is tortious. But the U.S. Constitution and California law do not allow her to prohibit ZoomInfo from providing accurate, publicly available information in response to inquiries, while offering access to more. Plaintiff fails to show that such conduct causes the concrete, actual-or-imminent injury that Article III demands. And both California's anti-SLAPP statute and the First Amendment foreclose plaintiff's claims on the merits. ZoomInfo's speech is protected expression on a matter of public interest, offering information about professionals occupying every corner of American public life. The connection to the public interest is especially strong here, as plaintiff's preview profile concerns her role as political director for a public-sector union—a fact plaintiff's brief omits.

Plaintiff insists this Court is powerless to address any of that. Defying basic jurisdictional principles, she argues the Court cannot consider Article III standing. And she attacks longstanding precedent allowing appeals from denials of anti-SLAPP motions. Those invitations to disregard binding precedent should be declined. Plaintiff's claims cannot be sustained under Article III, California's anti-SLAPP law, or the First Amendment. The Court should so hold.

## I.   PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff complains that, *if* an interested user were to specifically search her name, ZoomInfo *would* respond with accurate, publicly available professional contact information, while advising that its directory offers more information through free or paid subscriptions. ER-157-162 (¶¶28-37). That innocuous exchange—a 21st-century analogue of calling telephone directory assistance—causes no cognizable Article III injury-in-fact. Opening Br. 21-38. It causes no concrete *economic* injury, because plaintiff pleads no facts showing commercial value associated with her persona. Plaintiff's assertions of "worry" and "discomfort" fall far short of concrete *mental* injury. And *actual or imminent* injury—of any kind—is wholly absent: Plaintiff pleads no facts showing that anyone (other than her lawyers) ever requested or will request her information from ZoomInfo.

**A.     This Court Not Only May, But Must, Consider Plaintiff's Lack of Standing**

Plaintiff contends (at 33-38) this Court cannot consider her lack of Article III standing. That is wrong. Because Article III standing is essential to subject-matter jurisdiction, "a merits question cannot be given priority over an Article III question." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n.2 (1998); *see Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (addressing standing on interlocutory appeal).

This Court thus has a "duty" to assure itself of "standing" before addressing the merits—including in interlocutory appeals from denials of "'anti-SLAPP'" motions. *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1117 n.1, 1119 (9th Cir. 2017). ZoomInfo cited *Safari Club*. Opening Br. 21 n.5. Plaintiff ignores it. The authority plaintiff invokes *confirms* that, in interlocutory appeals, the Court has "pendent jurisdiction" to "review those issues that implicate 'the very power the district court used to issue the rulings then under consideration,'" including "Article III's standing requirements." *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (cited Resp. Br. 3-4, 37).[1] This Court can—must—decide plaintiff's standing.

---

[1] *Melendres* declined to address standing *only* for claims that were *not* the basis for the order being appealed. 695 F.3d at 997. None of plaintiff's other cases (at 35-37) overcome the requirement that Article III standing be decided before the merits. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901-02 (9th Cir. 2010), and *Batzel v. Smith*, 333 F.3d 1018, 1023 (9th Cir. 2003), declined to address First Amendment and personal-jurisdiction issues, not Article III standing. *Eng v. Cooley*, 552 F.3d 1062,

**B.     Plaintiff Alleges No Concrete Injury**

Plaintiff does not suggest that ZoomInfo publicly plastered her likeness on billboards or disclosed sensitive information.   She complains that, *if* someone *specifically requested* her professional contact information, ZoomInfo would provide some of that already-public information and advise that more is available through its directory.   ER-157-162 (¶¶28-37).   Plaintiff fails to show that exchange causes her concrete injury—much less injury analogous to harms actionable in 1789.

1.     *Plaintiff Fails To Plead Concrete Economic Harm*

Plaintiff concedes that, to plead concrete economic harm, she must "show that her name and persona have concrete, provable economic value" and that ZoomInfo's alleged conduct "denied her" that value.   Resp. Br. 48; *see* Opening Br. 25.   She must "'clearly . . . allege facts'" plausibly establishing that injury.   *Spokeo, Inc. v. Robins*,

---

1067-68 (9th Cir. 2009), declined to address prudential "third-party standing"—not Article III standing—and found "first person" standing regardless.   *Cassirer v. Kingdom of Spain* involved an interlocutory appeal on a different *jurisdictional* issue, and thus did not reach the *merits* without ascertaining Article III standing.   580 F.3d 1048, 1054-55 & n.7 (9th Cir. 2009), *rev'd on other grounds*, 616 F.3d 1019 (9th Cir. 2010) (en banc); *accord Rux v. Republic of Sudan*, 461 F.3d 461, 476 (4th Cir. 2006); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("there is no mandatory 'sequencing of jurisdictional issues'").   *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000), held "Article III standing" must be decided "prior to the certification of a class," and remanded to ensure it was satisfied.   Plaintiff's one counterexample, *Sierra National Insurance Holdings, Inc. v. Credit Lyonnais S.A.*, 64 F. App'x 6, 7 n.1 (9th Cir. 2003), is a pre-2007 unpublished decision that "may not be cited" to this Court, Circuit Rule 36-3(c), and is superseded by binding precedent regardless.

578 U.S. 330, 338 (2016). But the complaint alleges no facts showing that plaintiff's name and persona have preexisting commercial value, or that ZoomInfo has denied her opportunities to exploit them commercially. Opening Br. 25-26. Plaintiff does not contend otherwise. She insists that neither is *necessary* to establish concrete economic harm. Resp. Br. 43 n.13. But plaintiff has not alleged facts showing she was deprived of her persona's economic value in any *other* way, either.

Plaintiff insists that economic value can be "'inferred from use . . . to advertise.'" Resp. Br. 41; *see* ER-8. But the common law has never assumed economic value (or harm) from use alone. Opening Br. 26-27; pp. 10-11, *infra*. Perhaps *some uses* may justify an inference of economic value, *e.g.*, when a defendant uses a plaintiff's image in advertising to imply she endorses its products. Opening Br. 27-28. But the facts alleged here raise no such inference. ZoomInfo does not publicly use plaintiff's name or likeness on billboards or advertisements. To the contrary, ZoomInfo will display the preview profile plaintiff challenges *only if someone specifically asks* for her professional information. ER-159-162 (¶¶30-37). Those facts do not show that plaintiff's persona has "concrete, provable economic value," much less that ZoomInfo "denied her" that value. Resp. Br. 48. Telephone directory assistance might provide information about a person upon request, and offer more for a fee, but that does not imply the person's persona has economic value. Nor does

directory assistance, by responding to such inquiries, *deprive* that person of any economic value.

That preview profiles bring traffic to ZoomInfo's website, *see* Resp. Br. 44 (citing ER-152 (¶10)), says nothing about whether *plaintiff's* profile drives such traffic or has value of its own. At most, traffic from preview profiles shows that ZoomInfo's directory of 125+ million professionals has value in the aggregate, *see* Opening Br. 28 & n.6—not that any given person's information would have economic value standing alone. A telephone directory has considerable value as a compendium of information, but that does not imply that each individual phone number has its own economic value.

Plaintiff's professional information, moreover, is freely and publicly available elsewhere—including through plaintiff's, her employer's, and the Department of Labor's webpages. ER-99-113; Opening Br. 9-10, 28 n.6.[2] Freely accessible to everyone, the information lacks independent economic value; neither plaintiff nor ZoomInfo could sell it on its own. The directory's value instead comes from *compiling* information—for millions of professionals—in curated, searchable form.

---

[2] Plaintiff conceded below—and never disputes here—that those webpages are subject to judicial notice. *See* Opening Br. 16, 32 & n.9; ER-85; *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (appellee brief's failure "to advance any argument" on issue "waive[s] the argument").

Plaintiff suggests her professional information is "not 'publicly available'" because ZoomInfo purportedly "pays 'third-party vendors' for some of the data in Plaintiff's profile." Resp. Br. 45. The complaint nowhere alleges that the information "in Plaintiff's profile" came from third-party vendors; it says "Plaintiff does not know how" the information was obtained. ER-152 (¶11). Regardless, how ZoomInfo obtains information says nothing about its value or public availability. The complaint offers no facts suggesting information in plaintiff's preview profile is unavailable elsewhere.

Moreover, "'injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss.'" Opening Br. 29 (quoting *Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015)). Plaintiff identifies no economic benefit she *lost* because of ZoomInfo's preview profiles. Unlike the plaintiffs in *Davis v. Facebook, Inc.*, 956 F.3d 589, 600 (9th Cir. 2020), plaintiff never alleges she could have *sold* her information elsewhere. And while plaintiff repeatedly insists Zoom-Info "profit[ed]" from her information, Resp. Br. 41, 42, 43 & n.13, she identifies no supporting facts. As ZoomInfo explained, the complaint nowhere alleges that anyone (except plaintiff's lawyers) ever requested or viewed plaintiff's preview profile. Opening Br. 35-38. It does not allege anyone has purchased a subscription because of plaintiff's preview profile. *Id.* at 29-30. Nor is there any basis for

7

assuming anyone would—especially when ZoomInfo offers *free* options for accessing its directory. *Id.* Plaintiff offers no response.

2. *Plaintiff Fails To Plead Concrete Mental Injury*

Plaintiff concedes her claimed mental injury rests entirely on assertions that she is "'uncomfortable,'" "'worried,'" and "'uncertain.'" Resp. Br. 53 (quoting ER-163-164). That is fatal—Rule 8 requires *facts*, not bald assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Opening Br. 30-31. Plaintiff ignores Rule 8 and its command. The absence of facts supporting supposed mental injury, moreover, is glaring: If plaintiff truly were uncomfortable about use of her professional information, her own disclosure of that information—and failure to opt out of ZoomInfo's directory—would be inexplicable. *See* ER-20-21; Opening Br. 12 & n.9, 32.

"'[N]egative emotions'" like discomfort, worry, and uncertainty do not constitute concrete harm regardless. *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463 (8th Cir. 2022). Multiple circuits so hold. *See id.* (citing Sixth and Seventh Circuit cases); Opening Br. 31. Plaintiff addresses *none* of that authority. While she invokes *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 (9th Cir. 1974) (cited Resp. Br. 52-53), it too requires *severe* mental harm—"in the nature of humiliation, embarrassment, and outrage"—far greater than the worry alleged here.

Accepting plaintiff's mental-harm allegations as sufficient would render the concrete-injury requirement a dead letter. *Every* alleged statutory violation would

give rise to Article III injury-in-fact if the plaintiffs assert the violation "worried" them.  Opening Br. 34.  Plaintiff offers no response.

        3.     *Bare Statutory Violations Do Not Constitute Concrete Injury*

Plaintiff's position reduces to the contention that *any* use of her name without her consent or "control," that allegedly violates California Civil Code § 3344, *itself* constitutes concrete injury.  *See* Resp. Br. 48-52.  That conflates "injury in law" with "injury in fact."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).  The Supreme Court has "*rejected* the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. . . . *Article III standing requires a concrete injury even in the context of a statutory violation*.'"  *Id.* (emphasis added).  Plaintiff cannot simply assert that ZoomInfo violated a legal right.  She must *also* plead that the alleged violation caused real-world harm.  *Id.*

Plaintiff's invocation of "common-law" misappropriation, Resp. Br. 48-51, does not show that Framing-era courts would have deemed analogous harms actionable.  A 20th-century invention, the misappropriation tort reflects "a break in traditional thinking," 5 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:3 (5th ed. rev. 2022), not "harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," *TransUnion*, 141 S. Ct. at 2204.  Courts cannot

"loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.*

Plaintiffs invoking torts of such recent vintage by analogy at least must show an especially "'close relationship'" between the tort and the harm asserted. *Trans-Union*, 141 S. Ct. at 2204. That is absent here. Under common-law misappropri-ation, using a plaintiff's name or likeness did *not* traditionally support suit—the appropriation *also* had to cause the plaintiff distinct injury. Opening Br. 27. In *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990), for example, the court did not deny that the plaintiff alleged "'use'" and "'appropriation of plaintiff's name or likeness to defendant's advantage'" without her "'consent.'" It nonetheless rejected her misappropriation claim because she "failed to allege . . . any injury to her," holding that "[r]esulting injury is the *sine qua non* of a cause of action for misappropriation of name." *Id.* That holding—and others like it, Opening Br. 27—refutes the notion that use or appropriation alone could sustain a common-law misappropriation claim.[3]

Plaintiff cannot evade the need to show concrete injury by rebranding this suit as involving "privacy" or "intellectual property." Resp. Br. 48, 52. Common-law "courts did not permit a person to recover for invasion of the right to privacy,

---

[3] California's codification of misappropriation retains the "resulting injury" require-ment. *Slivinsky*, 221 Cal. App. 3d at 807. Plaintiff does not contest that injury is an element of her statutory claim. *See* Opening Br. 59-61; Resp. Br. 32.

including on a theory of misappropriation of name and likeness, based on public information." Spokeo Br. 16; *see id.* at 16-18 & n.2 (collecting authorities); *Melvin v. Reid*, 112 Cal. App. 285, 290 (1931) ("There can be no privacy in that which is already public."). Likewise, "intellectual-property law did not provide protection for information that already was in the public domain," and infringement required proof of "financial injury." Spokeo Br. 20-22 (collecting authorities). Here, the information in plaintiff's preview profile is already public, and plaintiff has shown no financial injury. *See* pp. 4-8, *supra*.

### C. Plaintiff Lacks Actual or Imminent Injury

Any putative injury must be actual or imminent. Opening Br. 35-38. Plaintiff's is anything but. She asserts injury from so-called "advertisements incorporating her name and persona." Resp. Br. 53-54. But the supposedly injurious "advertisements" would never appear unless (1) a user specifically "search[es] for [plaintiff] by name," *and* (2) that user clicks on her ZoomInfo preview profile to generate the page with the so-called advertisement. ER-159-163 (¶¶30-38). The complaint alleges *no* facts showing that anyone (apart from plaintiff's attorneys) has ever taken either step, or will do so.

Plaintiff urges that one could *infer* "that users have searched and will search for Plaintiff's name" because ZoomInfo's preview profiles are accessible online. Resp. Br. 54. That suggests only that it is *possible* to view plaintiff's preview

profile, *if* someone searches for her information on ZoomInfo. It does not show that anyone *has* searched for her information and chosen to view the profile, or that such actions are "'certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).[4] Even an "'objectively reasonable likelihood'" someone would see the profile—absent here—is insufficient to establish "imminent" injury. *Id.* at 409-10.

Plaintiff's theory defies *TransUnion*. There, the fact that "TransUnion *could* have divulged [the plaintiffs'] misleading credit information to a third party at any moment" did not establish actual or imminent injury, because the plaintiffs had not shown a sufficient likelihood the "information *would* be requested by third-party businesses and provided by TransUnion." 141 S. Ct. at 2212 (emphasis added). Likewise here, that ZoomInfo *could* display the preview profile *if* someone requests plaintiff's information does not establish actual or imminent injury, because plaintiff has not shown a sufficient likelihood that the information *would* be requested—and viewed—by a third party.

Plaintiff asserts that, "unlike in *TransUnion*, Plaintiff alleges publication and broad dissemination." Resp. Br. 55; *see id.* at 54, 57. That rewrites the complaint.

---

[4] The complaint, moreover, alleges that plaintiff's preview profile would appear "as the first search result" in Google *only if* someone searched for her name *and* "'zoominfo.'" ER-159 (¶32). It nowhere suggests anyone is *likely* to perform that search. Searching for plaintiff's name *without* "zoominfo" turns up plaintiff's LinkedIn profile and AFSCME webpage as top results; as of this writing, the ZoomInfo preview profile does not appear in the top 20 results.

The complaint alleges that the supposedly injurious "advertisements" *would* be displayed *only if* a third party specifically requested plaintiff's information from ZoomInfo *and* chose to view her preview profile. ER-159-163 (¶¶30-38). As in *TransUnion*, publication and dissemination depend on a third party requesting the relevant information. Plaintiff fails to plead facts showing that such a request occurred, or imminently would occur.

That *TransUnion* involved a "different type of harm," Resp. Br. 56, is irrelevant. In both cases, the asserted harm could materialize only if a third party requests, and then views, certain information. Plaintiff's suggestion that she suffers harm "regardless of whether a third party witnesses" her preview profile, Resp. Br. 57, makes no sense. She asserts injury from so-called "advertisements" that purportedly "use" her persona without permission. Resp. Br. 56-57. If the preview profile and associated "advertisements" never appear, there is no "use" of her persona—and no injury. Plaintiff invokes "libel and slander *per se*." Resp. Br. 57. But those torts too "'require evidence of *publication*,'" *TransUnion*, 141 S. Ct. at 2211, and require that a "third party saw the offending publication," Resp. Br. 57.

Plaintiff observes that her "profile is part of the *subscription product* Zoom-Info's existing subscribers and trial users use every day." Resp. Br. 57 (emphasis added). But plaintiff has *disclaimed* any challenge to ZoomInfo's *subscription* directory. *See* ER-72. The complaint nowhere alleges that the subscription directory

13

contains the "advertisements" that allegedly cause plaintiff injury. And it nowhere alleges that anyone has or will view plaintiff's profile in that directory anyway.

## II. CALIFORNIA'S ANTI-SLAPP STATUTE REQUIRES DISMISSAL

California's anti-SLAPP statute requires dismissal. Cal. Civ. Proc. Code §425.16. Plaintiff's effort to foreclose ZoomInfo from responding to inquiries with truthful, publicly available information—and from apprising the public of further information—defies the Constitution and California law alike.

### A. Plaintiff's Efforts To Evade the Merits Fail

Plaintiff attacks this Court's authority to hear ZoomInfo's appeal. Resp. Br. 9-16. As she concedes (at 12-15), however, this Court has already held that the collateral-order doctrine gives it jurisdiction over appeals from denials of anti-SLAPP motions, to protect defendants' "substantive immunity from suit" on "meritless claim[s] brought to chill rights of free expression." *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003). This Court has "affirm[ed] the validity of [that] holding" in light of the very Supreme Court precedent plaintiff contends has undermined it. *DC Comics v. Pacific Pictures Corp*., 706 F.3d 1009, 1014-16 (9th Cir. 2013) (citing *Will v. Hallock*, 546 U.S. 345 (2006)). That precedent is binding.[5]

---

[5] Plaintiff's accusation that ZoomInfo "falsely asserts" jurisdiction under 28 U.S.C. §1291, Resp. Br. 3, overlooks that the collateral-order doctrine is an *application* of §1291's "'final decision[]'" rule, *DC Comics*, 706 F.3d at 1012.

Plaintiff's contention that California Civil Procedure Code § 425.17(e) defeats jurisdiction, Resp. Br. 9-11, is unavailing. That provision makes interlocutory appeal unavailable only "*[i]f* [the] trial court denies a special motion to strike *on the grounds*" that one of § 425.17's exemptions from the anti-SLAPP law applies, § 425.17(e) (emphasis added)—*i.e.*, only if "the trial court determines" an exception applies, *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 767 (9th Cir. 2017). The district court made no such determination here; it never even cited § 425.17. And as explained below, neither exemption plaintiff invokes—for comparative advertising and suits solely in the public interest—applies here. *See* pp. 23-25, *infra*.

## B.    ZoomInfo's Speech Is Entitled to Anti-SLAPP Protections

Anti-SLAPP protections extend to claims "aris[ing] from *any act* of [the defendant] *in furtherance of* the [defendant's] right of petition or free speech . . . in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added); *see* Opening Br. 40-41; Resp. Br. 17, 23. Directories of "businesses and professionals" are speech "entitled to the full protection of the First Amendment." *Dex*, 696 F.3d at 954. And the preview profiles at issue here qualify as "conduct in furtherance of . . . th[at] constitutional right of free speech," § 425.16(e)(4), or "writing[s] made in a place open to the public or a public forum," § 425.16(e)(3).[6]

---

[6] Plaintiff asserts that § 425.16(e)(4) is the anti-SLAPP law's "only subsection that could plausibly apply to ZoomInfo's teaser profiles." Resp. Br. 22. But "Web sites accessible to the public" are "'public forums' for purposes of" § 425.16(e)*(3)*,

The only question is whether ZoomInfo's speech is "in connection with a public issue." §425.16(b)(1). It plainly is.

1. *ZoomInfo's Directory and Preview Profiles Are Speech in Connection with a Public Issue*

The anti-SLAPP law must be "construed broadly," Cal. Civ. Proc. Code §425.16(a), to protect expression concerning "*any issue in which the public is interested.*" *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). That makes sense: The law safeguards the First Amendment, *see* §425.16(a)-(b)(1), which grants "'special protection'" to any speech that "can 'be fairly considered as relating to any matter of political, social, or other concern to the community,'" as opposed to "matters of 'purely private concern,'" *Snyder v. Phelps*, 562 U.S. 443, 452-54 (2011).

ZoomInfo's speech falls squarely on the "public," not "purely private," side of the line. ZoomInfo's directory and preview profiles collect, and offer to the public, business information and news about millions of professionals who compose our country's political, social, and commercial fabric. Opening Br. 42-43. Providing "in convenient form" accurate, publicly available information about those involved in American public life, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491

---

*Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006), and plaintiff concedes ZoomInfo's teaser profiles are "available to anyone" online, Resp. Br. 56.

(1975), clearly contributes to "'any matter of . . . concern to the community,'" *Snyder*, 562 U.S. at 453. It is not limited to "'purely private concern[s].'" *Id.* at 454.

Case after case confirms that commonsense conclusion. Opening Br. 44. Courts have "easily conclude[d]" that companies "compiling and distributing business information" through websites "available in the community" qualify for anti-SLAPP protection. *Ellis v. Dun & Bradstreet*, No. 18-cv-10077-MRW, 2019 WL 8017821, at *4 (C.D. Cal. Nov. 20, 2019); *see Davis v. Avvo, Inc.*, No. 11-cv-1571-RSM, 2012 WL 1067640, at *1, *3 (W.D. Wash. Mar. 28, 2012) (professional directory); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2017 WL 6539909, at *11 (N.D. Cal. Dec. 21, 2017) (subscription pharmaceutical database); *Kronemyer v. Internet Movie Database Inc.*, 150 Cal. App. 4th 941, 948 (2007) (movie credits database); *cf. Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016) (finding professional directory "akin to the yellow pages" "newsworthy"). Plaintiff fails to distinguish those cases.

Plaintiff accuses ZoomInfo of "miscit[ing]" *Ellis* because *Ellis* "denied the defendant's anti-SLAPP motion." Resp. Br. 21. But *Ellis* "easily concluded" that a website "compiling and distributing business information" merited anti-SLAPP protection because it was "speaking in connection with a public issue in a public forum." 2019 WL 8017821 at *4. The court denied the anti-SLAPP motion only at a later step, finding the claim likely to succeed because the plaintiff pleaded *actual*

*malice*. *Id.* at \*5-6. That has no bearing on whether the website in *Ellis*—or the information here—is connected to public issues.

Plaintiff quibbles that *Davis* and *Vrdolyak* involved different state laws, Resp. Br. 20-21 & nn.6-7, but identifies no material difference. The Washington law in *Davis* closely tracked California's, protecting speech "'in a place open to the public or a public forum in connection with an issue of public concern.'" 2012 WL 1067640 at \*3; *see* Cal. Civ. Proc. Code § 425.16(e)(3).[7] Applying that language, *Davis* held that a professional directory "gathered from publicly available material" bears on public issues. 2012 WL 1067640 at \*1. Likewise, *Vrdolyak*'s declaration that a website of information about "professionals," akin to a "yellow page directory," is "newsworthy," 206 F. Supp. 3d at 1388—*i.e.*, a matter "in which the public is interested," *Nygard*, 159 Cal. App. 4th at 1042 (emphasis omitted).

Plaintiff protests (at 22) that *Exeltis* and *Kronemyer* involved *different* public issues—prenatal vitamins and the movie *My Big Fat Greek Wedding*. But that underscores how "expansive" the universe of public issues is. *Nygard*, 159 Cal. App. 4th at 1041. And *Exeltis*'s extension of anti-SLAPP protection to a database "only available to paying subscribers," 2017 WL 6539909 at \*11, makes protection

---

[7] The Washington law was later held unconstitutional, *see* Resp. Br. 20 n.6, based on its *procedural* requirements (which differed from California's), not its *substantive* protections (which were virtually "identical" to California's), *Davis v. Cox*, 183 Wash. 2d 269, 284 (2015).

for ZoomInfo's preview profiles—which provide free information—an *a fortiori* case.

By contrast, *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 141 (2019) (cited Resp. Br. 19-20), concerned statements made "privately" in "confidential reports" to clients who "agree[d] to keep them confidential." The information was irrelevant to public discourse because the "information never entered the public sphere, and the parties never intended it to." *Id.* at 153. Here, plaintiff asserts that ZoomInfo makes its preview profiles "publicly" "available to anyone" "on the Internet" who cares to request them. Resp. Br. 56; *see* ER-157 (¶28), ER-159-160 (¶¶30-33). Far from being "identical to *FilmOn*," Resp. Br. 20, this case is its opposite.

The only superficial similarity with *FilmOn* is that the reports there were provided to "paying clients," 7 Cal. 5th at 153, while ZoomInfo provides free information *and* a subscription option. But the fact that speech is "commercially oriented" or used for "business purposes" does not prevent "anti-SLAPP protection." *Id.* The *Wall Street Journal* is a subscription newspaper used for business purposes, but it plainly contributes to public discussion. The problem in *FilmOn* was that the speech was *deliberately walled off from public discourse* by confidentiality agreements that ensured it would never enter the public sphere. ZoomInfo's preview profiles make business information freely available to those requesting it. They also inform the

public that additional information in ZoomInfo's directory is available to anyone who wishes to subscribe. Plaintiff harps on ZoomInfo's paid subscriptions, Resp. Br. 19-20, but she does not challenge those—and she ignores *free* options for accessing the directory, ER-160-162 (¶¶34-37). The connection between Zoom-Info's speech and the "public sphere," *FilmOn*, 7 Cal. 5th at 153, is apparent.

Professional directories—whether ZoomInfo's or paper phonebooks—contribute to public knowledge by offering convenient *collections* of information. *See Cox*, 420 U.S. at 491; Opening Br. 49. Plaintiff (at 32) offers no sound reason to ignore that context and examine individual entries in isolation. Nor does plaintiff deny that her atomized approach would impose prohibitive burdens and create precisely the chill that anti-SLAPP protections are meant to combat. Opening Br. 49-50.

Plaintiff would judge a supposed "advertise[ment]" without considering the "service it advertises." Resp. Br. 23. But whether preview profiles or links offering access to ZoomInfo's directory have a "connection with a public issue," Cal. Civ. Proc. Code § 425.16(b)(1), cannot fairly be determined without considering whether the directory *to which they offer access* concerns public issues. Opening Br. 50. Here, the profiles make the public aware of additional protected speech—a compendium of information that is likewise of First Amendment-protected public interest.

20

The availability of that information is itself a matter of public interest. Opening Br. 50; pp. 27-29, *infra*.

Even viewed in isolation, ZoomInfo's preview profiles are speech in connection with public issues. They provide useful business information and news about the professionals they address—enough for interested members of the public to understand a professional's employer, position, and responsibilities. Citizens concerned about a company's safety record, political stances, or prospects for creating jobs (to name just a few issues of keen public interest) can use the previews to identify professionals responsible for, or knowledgeable about, those issues. That too facilitates public discourse.

2. *Plaintiff's Preview Profile Concerns Public Issues Involving Public-Sector Unions' Political Activities*

Plaintiff's own preview profile vividly illustrates the connection between preview profiles and public issues. Because plaintiff is "Political and Legislative Director at The AFSCME," a major public-employee union, her profile provides information and "Recent News" about that role. ER-115-116, ER-157 (¶28). That bears directly on issues of immense public interest: Unions' political activities "'have powerful political and civic consequences'" and are "matters of substantial public concern." *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2460, 2464 (2018). Congress recognizes as much. 29 U.S.C. §§435(a), 431(b)(3) (information about public-sector union employees "shall be public"). ZoomInfo made those points at

length (at 6-9, 50-51).  Plaintiff offers no response—*never mentioning* her role as a union's Political and Legislative Director.

### 3.  *ZoomInfo's Speech Is Not "Commercial"*

Insofar as plaintiff urges that the motivation for ZoomInfo's speech is "commercial," ER-16-17; *see* Resp. Br. 19-21, the effort fails.  "[E]conomic motive in itself is insufficient to characterize a publication as commercial."  *Dex*, 696 F.3d at 960.  And "'[w]hether speech has a commercial or promotional aspect is not dispositive' of whether it is made in connection with an issue of public interest."  *FilmOn*, 7 Cal. 5th at 154; *id.* at 153 (rejecting "'commercial speech' category" ineligible for anti-SLAPP protection).  The *New York Times* and virtually every author seek profit.  That does not render their speech unprotected under the anti-SLAPP law or the First Amendment.  Likewise with ZoomInfo.  Opening Br. 47-48; Professors Br. 5-8; pp. 27-29, *infra*.

### C.  **Plaintiff Cannot Evade Anti-SLAPP Safeguards**

Plaintiff's smattering of other arguments fails.

1.  Plaintiff urges that her "claim does not arise from speech at all, because it does not arise from ZoomInfo's publication of her teaser profile," but from "ZoomInfo's failure to compensate and obtain consent."  Resp. Br. 24.  That contradicts her representation below that her "claims are directed at the teaser profiles."  ER-72.  The argument also lacks merit.  It would exempt all misappropriation claims

22

from anti-SLAPP protections, because all such claims involve alleged failure to obtain consent or pay compensation for challenged uses. But courts routinely apply California's anti-SLAPP law to misappropriation claims, including "dispute[s] over who can profit from [a plaintiff's] image." *Hilton*, 599 F.3d at 908; *see Sarver v. Chartier*, 813 F.3d 891, 902 (9th Cir. 2016).

Plaintiff's only authority involved a *breach-of-contract* claim—failure to pay for a screenplay the plaintiff "desperately wanted" made into a movie—that did "not challenge the activity of filmmaking at all." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1191 (9th Cir. 2017). That does not suggest *misappropriation* claims are ineligible for anti-SLAPP protection, especially where (as here) the plaintiff alleges her name was used to advertise a product "she has no desire to promote" and seeks an injunction against continued use. ER-163 (¶44), ER-168 (¶E).

2.      Nor do statutory "exemptions" from California's anti-SLAPP law save plaintiff's suit. Resp. Br. 9-11; *see* Cal. Civ. Proc. Code §425.17(b)-(c). The district court did not invoke those exemptions, and rightly so.

a.      Plaintiff invokes §425.17(c), describing it as a "commercial speech" exemption. Resp. Br. 9-10. The California Supreme Court, however, has held that §425.17(c) exempts "'only a subset of commercial speech'" from anti-SLAPP protection—"specifically, comparative advertising." *FilmOn*, 7 Cal. 5th at 147. It does not exempt other speech, even if "commercially oriented." *Id.* at 148.

Plaintiff's preview profile is not "comparative advertising"—it contains no representations comparing ZoomInfo's service with competitors. *See id.* at 147 & n.4.[8]

b.    Plaintiff invokes §425.17(b), which exempts suits "brought *solely* in the public interest or on behalf of the general public."  Cal. Civ. Proc. Code §425.17(b) (emphasis added).  That exemption is "narrowly construed," *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 22 (2010), and is inapplicable if a "litigant seek[s] *'any' personal relief*," *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 317 (2008) (emphasis added).  "If individualized relief is sought," the exemption is unavailable.  *Id.* at 320.

Plaintiff expressly seeks "individual[]" "relief," including "restitution," "royalties," "damages" for "actual harm" such as purported "mental injury," and "statutory damages."  ER-163 (¶44), ER-168-169 (¶¶F-G).  That relief would inure to plaintiff's "personal advantage" and advance her "own interests." *Club Members*, 45 Cal. 4th at 317.  Because plaintiff "seeks recovery of damages personal to [her]self, [her] claim fails to meet" §425.17(b)'s requirements.  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1067 (2005); *see id.* at 1066

---

[8] Plaintiff cites (at 10) a pre-*FilmOn* case that applied §425.17(c) to "false advertising." *JAMS, Inc. v. Superior Court*, 1 Cal. App. 5th 984, 994 (2016). *FilmOn* superseded that decision.  Regardless, plaintiff alleges no "false advertising"; she concedes the preview profile's accuracy.  ER-157 (¶28).

(indicating § 425.17(b) applies only to suits by "private attorneys general, *without an injured plaintiff*").[9]

Subsection (b) is also limited to suits seeking to vindicate an "important right affecting the public interest." Cal. Code Civ. Proc. § 425.17(b). Plaintiff's action serves no such public interest—just private ones. And her suit would *disserve* the public by decreasing access to accurate, public information about matters of public concern. *See Schwarzburd v. Kensington Police Prot. & Cmty. Servs. Dist. Bd.*, 225 Cal. App. 4th 1345, 1352 (2014) (lawsuit seeking early end to public meetings not in public interest because it would decrease public access).

### D. Plaintiff Fails To State a Viable Misappropriation Claim in View of First Amendment and California Law Protections

Because plaintiff's claims arise from ZoomInfo's speech in connection with a public issue, she must show she has "properly stated" a claim under "Federal Rule of Civil Procedure 12(b)(6)." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir.

---

[9] *See also Blackburn v. ABC Legal Servs., Inc.*, No. 11-cv-01298-JSW, 2011 WL 8609453, at *3 (N.D. Cal. June 16, 2011) (§ 425.17(b) inapplicable because plaintiff sought restitution and actual damages); *Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2009 WL 10691367, at *2 (E.D. Cal. Nov. 19, 2009) (statutory damages, restitution, disgorgement). Plaintiff cites *Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1218 (N.D. Cal. 2010), but that case relied on the fact that "California's anti-SLAPP law is inapplicable to federal claims." Insofar as *Smith* suggested that § 425.17(b) could apply where plaintiffs seek "differential" relief compared to "other class members," *id.*, it cannot be reconciled with *Club Members*' authoritative construction.

2018); *see* Opening Br. 52. She has not—and cannot, consistent with the First Amendment and California law.

1. Plaintiff insists she need only satisfy a "low" "minimal merit" standard, and not the "higher" and "different" standard of Rule 12(b)(6). Resp. Br. 25-27, 32, 35. But where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim," "court[s] should apply the Federal Rule of Civil Procedure 12(b)(6) standard." *Planned Parenthood*, 890 F.3d at 834. Indeed, applying that standard is *necessary* to avoid "conflicts between California's anti-SLAPP law's procedural provisions and the Federal Rules." *Id.* at 833.

2. Plaintiff cannot prevail under any standard. Both "common law" and "statutory" California right-of-publicity misappropriation claims "exemp[t] from liability the use of a name or likeness in connection with the reporting of a matter in the public interest." *Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 793 (1995); *see* Resp. Br. 27. Here, plaintiff's claims arise from ZoomInfo's speech in connection with issues of public interest. *See* pp. 16-22, *supra*. That is dispositive: Those First Amendment-protected interests not only trigger anti-SLAPP protections, but also defeat plaintiff's claims on the merits. Opening Br. 53-54.

Indeed, California's immunities sweep *more broadly* than the First Amendment. To "*avoid* First Amendment questions in the area of misappropriation," they "provid[e] *extra breathing space* for the use of a person's name in connection with

matters of public interest." *New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302, 309 (9th Cir. 1992) (emphasis added); *see* Opening Br. 53. If plaintiff's claims would violate ZoomInfo's First Amendment rights—or come anywhere close—they must be stricken.

That is the case here. "[D]irectories" like ZoomInfo's are "entitled to the full protection of the First Amendment." *Dex*, 696 F.3d at 954. While plaintiff urges that her suit "does not seek to prevent publication of ZoomInfo's directory," Resp. Br. 32 n.10, *Dex* similarly involved an effort to subject a directory's distribution to "certain conditions," not ban it, 696 F.3d at 954. And "the full protection of the First Amendment," *id.*, protects against abridgements short of outright bans. If plaintiff's suit were to succeed, it would be little different from barring publication of ZoomInfo's directory: The right to publish a directory would be meaningless without the right to tell the public about its contents and how to access it. Opening Br. 54-55. Under plaintiff's theory, biography writers could not provide truthful information about the content of their books to induce sales—and phone companies could not provide directory information—without getting each subject's permission first. The First Amendment allows no such rule.

The First Amendment and California law thus extend "protection from tort liability" beyond expressive works to "advertisements for [those] expressive works." *Charles v. City of Los Angeles*, 697 F.3d 1146, 1154 (9th Cir. 2012) (citing

*Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) (Bird, C.J., concurring); *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982)); *see Montana*, 34 Cal. App. 4th at 797; *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413-14 (2001); Opening Br. 54-57. Because ZoomInfo's directory is "entitled to the full protection of the First Amendment," *Dex*, 696 F.3d at 954, so too are any "advertisements" that "truthful[ly] promot[e]" that protected expression and "indicat[e] the content of the publication," *Charles*, 697 F.3d at 1154.

Plaintiff invokes *Charles*, 697 F.3d at 1153, for the notion that only "advertisements for books that are distributed as part of a religious mandate may be entitled to full First Amendment protection." Resp. Br. 30. But plaintiff relies on an inapposite portion of *Charles* addressing sign ordinances. *Charles* goes on to explain—on the same page, no less—that when "tort liability" is involved, "we extend an advertised work's First Amendment protection to advertisements for the work." 697 F.3d at 1153. That ensures that tort actions, including right-of-publicity claims like plaintiff's, do not "chok[e] the truthful promotion of protected speech." *Id.* at 1154, 1155. That principle governs here.

The Court's "narrow" decision in *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1118 (9th Cir. 2021) (cited Resp. Br. 31), is inapposite. The advertisements there were *not* for an expressive work, but for "nutritional supplements." *Id.* at 1119. The Court's conclusion that the advertisements did not enjoy the same protections

28

as other speech with which they were interspersed, *id.*, says nothing about whether advertisements *for an expressive work* enjoy the same protections as the work itself. Numerous cases—from *Charles* to *Cher*—answer that question in the affirmative.

Neither California's right-of-publicity law nor the First Amendment tolerates tort liability for truthful speech about public matters, including the use of a person's name or likeness to promote a protected work in which that person's name or likeness appears. Opening Br. 54-55 & nn.14-16. Plaintiff does not seriously contend otherwise. She quibbles about her and Cher's relative notoriety. Resp. Br. 28. But a work need not involve a "world-famous pop icon," *id.*, to concern matters of public interest or receive full First Amendment protection. ZoomInfo has the uncontested First Amendment right to publish a directory of business information. ZoomInfo also has the right to *promote* that work by telling the public about it— including what it contains—by answering inquiries about plaintiff with accurate, public information in its directory.

Plaintiff says ZoomInfo's directory is "not an 'expressive work.'" Resp. Br. 29. But this Court has *already held* that "directories" of business information are expressive works "entitled to the full protection of the First Amendment," *Dex*, 696 F.3d at 954. ZoomInfo's directory of 125+ million professionals is *at least* as expressive as the phonebooks in *Dex*.

Plaintiff would place California's misappropriation tort in constitutional peril by outlawing First Amendment-protected speech. Professors Br. 8-9. Google would "arguably violate[ ] the right of publicity every time it returns an organic search result about a person." *Id.* at 8. Book publishers would face crippling liability for telling the public about the individuals their books discuss. The Court should not read state law in a way that renders it unconstitutional. And any such constitutional infirmity would mean plaintiff has failed to state a viable claim regardless.

3.      Plaintiff nowhere denies she must plausibly allege "actionable injury" to state a claim. Resp. Br. 32; *see* Opening Br. 59-61. Plaintiff has failed to allege that anyone has ever *seen* her preview profile, much less that cognizable injury resulted. *See* pp. 4-14, *supra*; Opening Br. 59-61. Even if plaintiff could clear Article III's threshold—she cannot—she would fail to establish the injury needed to proceed on the merits.

## CONCLUSION

The Court should reverse the denial of ZoomInfo's anti-SLAPP motion and remand with instructions to dismiss either for lack of jurisdiction or on the merits.

January 9, 2023                          Respectfully submitted,

                                         s/ Shon Morgan

Jeffrey A. Lamken                        Shon Morgan
Lucas M. Walker                            *Counsel of Record*
Lauren M. Weinstein                      Daniel C. Posner
Jennifer E. Fischell                     John W. Baumann
MOLOLAMKEN LLP                           QUINN EMANUEL URQUHART &
The Watergate, Suite 500                    SULLIVAN, LLP
600 New Hampshire Avenue, N.W.           865 S. Figueroa Street, 10th Floor
Washington, D.C.  20037                  Los Angeles, CA  90017
(202) 556-2000 (telephone)               (213) 443-3000 (telephone)
(202) 556-2001 (facsimile)               shonmorgan@quinnemanuel.com

Eugene A. Sokoloff                       Cristina Henriquez
Jordan A. Rice                           QUINN EMANUEL URQUHART &
Kenneth E. Notter III                       SULLIVAN, LLP
MOLOLAMKEN LLP                           555 Twin Dolphin Drive, 5th Floor
300 N. LaSalle Street, Suite 5350        Redwood Shores, CA  94065
Chicago, IL  60654                       (650) 801-5000 (telephone)
(312) 450-6700 (telephone)
(312) 450-6701 (facsimile)

Alexandra C. Eynon
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Counsel for ZoomInfo Technologies Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-35305

I am the attorney or self-represented party.

**This brief contains** | 6,999 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(•) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [          ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Shon Morgan | **Date** | 01/09/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/2018*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 9, 2023, I caused the foregoing document to be filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


January 9, 2023                          <u>s/ Shon Morgan</u>
                                         Shon Morgan