*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

—————— • ——————

KIM CARTER MARTINEZ,
on behalf of herself and all others similarly situated,
*Plaintiff-Appellee,*

v.

ZOOMINFO TECHNOLOGIES INC., a Delaware corporation,
*Defendant-Appellant.*

_____

*On Appeal from the United States District Court for the Western District of Washington (Tacoma),
Senior District Judge Marsha J. Pechman, No. 3:21-cv-05725-MJP-BNW*

## BRIEF OF DAN KANES AS *AMICUS CURIAE* SUPPORTING DEFENDANT-APPELLANT

PATRICK M. RYAN
*pryan@bartkolaw.com*
STEPHEN C. STEINBERG
*ssteinberg@bartkolaw.com*
CHAD E. DEVEAUX
*cdeveaux@bartkolaw.com*
TYLER M. CUNNINGHAM
*tcunningham@bartkolaw.com*
TAYLOR YAMAHATA
*tyamahata@bartkolaw.com*
**BARTKO LLP**
One Embarcadero Center, Suite 800, San Francisco, California 94111
Telephone: (415) 956-1900

*Attorneys for Amicus Curiae Dan Kanes*

 

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................... iii

RULE 29(a)(4)(E) CERTIFICATION .....................................................1

INTEREST OF THE *AMICUS CURIAE* ................................................2

AMICUS'S POSITIONS .......................................................................3

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................3

ARGUMENT ........................................................................................8

    I.    *Erie* Requires Courts to Interpret the FRCP with Sensitivity to State Policies and Harmonize Conflicting State Laws Whenever Possible .........................................................................................8

        A.    The Genesis of the *Erie* Doctrine ..............................8

        B.    The Doctrine Is Guided By *Erie*'s "Twin Aims" ........9

        C.    *Erie* Does Not Apply to State Laws that Contradict the FRCP .....................................................10

        D.    No Collision Exists When Federal and State Rules Can Be Reconciled to Accommodate the Principal State Interests ................................................11

        E.    *Gasperini* Remains Controlling ...............................15

    II.    *Erie* Requires Federal Courts to Apply California's anti-SLAPP Law ..............................................................................18

        A.    What the anti-SLAPP Law Is and How It Works ......18

        B.    The anti-SLAPP Law Qualifies all California's Causes of Action ................................................19

        C.    This Circuit's anti-SLAPP Decisions Correctly Apply *Erie* ..................................................20

    III.    Courts in Disagreement with this Circuit Misapplied the *Erie* Test ...................................................................21

i

     A.    *Los Lobos* Wrongly Held that Fee-Shifting Is Not Substantive ................................................................................21

     B.    Four Circuits Wrongly Held anti-SLAPP Laws Violate the FRCP ...........................................................................23

IV.   CONCLUSION.....................................................................................26

CERTIFICATE OF COMPLIANCE....................................................................27

**TABLE OF AUTHORITIES**

**CASES**            **Page(s)**

*Abbas v. Foreign Pol'y Grp., LLC*,
783 F.3d 1328 (D.C. Cir. 2015) ....................................................7, 23, 24, 25

*Agostini v. Felton*,
521 U.S. 203 (1997)..................................................................................17

*Briggs v. Eden Council for Hope & Opportunity*,
19 Cal. 4th 1106 (1999) ...........................................................................5

*Carbone v. Cable New Network, Inc.*,
910 F.3d 1345 (11th Cir. 2018)...........................................7, 8, 23, 24, 25

*CoreCivic Inc. v. Candide Group, LLC*,
46 F.4th 1136 (9th Cir. 2022)........................................................16, 20, 21

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013).................................................................13

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961).................................................................................5

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938)...........................................................................*passim*

*Flatley v. Mauro*,
39 Cal. 4th 299 (2006)...........................................................................20

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996)..........................................................................*passim*

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ...........................................................6, 7, 10

*Guaranty Trust Co. of N.Y. v. York*,
326 U.S. 99 (1945)................................................................................10

*Hamilton v. Wal-Mart Stores, Inc.*,
39 F.4th 575 (9th Cir. 2022)..............................................................11, 17

*Hanna v. Plumer*,
380 U.S. 460 (1965)...............................................................4, 9, 10, 12, 22

*Klocke v. Watson*,
936 F.3d 240 (5th Cir. 2019).......................................................6, 7, 23, 24

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020)............................................................6, 23, 24, 25

*Laub v. Horbaczewski*,
No. 2:17–cv–06210–JAK (KSx), 2019 WL 3492402
(C.D. Cal. July 30, 2019)...........................................................................2

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
885 F.3d 659 (10th Cir. 2018).............................................................7, 21, 22

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013)................................................................18, 19

*Moore v. Liu*,
69 Cal. App. 4th 745 (1999) .......................................................................20

*New State Ice Co. v. Liebmann*,
285 U.S. 262 (1932)....................................................................................3

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
54 Cal. App. 5th 738 (2020) ........................................................................6

*Owens v. Chasko*,
No. 1:11–CV–00335 AWI GSA, 2011 WL 3163261
(E.D. Cal. July 26, 2011) ............................................................................5

*Planned Parenthood Fed. of Am., Inc. v. Center for Med. Progress*,
890 F.3d 282 (9th Cir. 2018)..........................................8, 18, 19, 20, 21, 24

*Robles v. Chalilpoyil*,
181 Cal. App. 4th 566 (2009) .................................................................5, 18

*S.B. Beach Prop. v. Berti*,
39 Cal. 4th 374 (2006) ..............................................................................18

*Salma v. Capon*,
161 Cal. App. 4th 1275 (2008) ...................................................................18

*Schoendorf v. U.D. Registry, Inc.*,
97 Cal. App. 4th 227 (2002) ......................................................................18

*Shady Grove v. Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)..................................................................7, 15, 16, 17

*Shelley v. Kraemer*,
334 U.S. 1 (1948)......................................................................................19

*Simms v. Holiday Inns, Inc.*,
746 F. Supp. 596 (D. Md. 1990).............................................................19, 20

*Swift v. Tyson*,
    41 U.S. (16 Pet.) 1 (1842)......................................................8

*Thompson v. Johns-Manville Sales Corp.*,
    714 F.2d 581 (5th Cir. 1983)...............................................4

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963 (9th Cir. 1999)....................................6, 20, 22

*U.S. v. Blackwell*,
    852 F.3d 1164 (9th Cir. 2017)...........................................10

*Walker v. Armco Steel Corp.*,
    446 U.S. 740 (1980)................................10, 11, 12, 17, 20

*Walker v. Armco Steel Corp.*,
    592 F.2d 1133 (10th Cir. 1979)........................................12

*Younger v. Harris*,
    401 U.S. 37 (1971).................................................................4

## CONSTITUTIONS

U.S. Const. amend. VII .............................................................13

## STATUTES

28 U.S.C. § 2072 .....................................................................10

Cal. Code of Civ. Proc. § 425.16 ............................................4

NM ST § 38-2-9.1(B)..............................................................22

N.Y. C.P.L.R. § 901(b) ...........................................................16

N.Y. C.P.L.R. § 5501(c) ..........................................................26

## RULES

Fed. R. Civ. P. 3.......................................................................11

Fed. R. Civ. P. 8.................................................................8, 24

Fed. R. Civ. P. 12..........................................................8, 24, 25

Fed. R. Civ. P. 23..............................................................16, 17

Fed. R. Civ. P. 56..........................................................8, 24, 25

Fed. R. Civ. P. 59......................................................13, 15, 25

**OTHER AUTHORITIES**

Adam N. Steinmann, *Our Class Action Federalism:* Erie *and the Rules Enabling Act after* Shady Grove, 86 Notre Dame L. Rev. 1131 (2011)..........4

D. Chanslor Gallenstein, *Whose Law Is It Anyway?*, 60 U. Louisville L. Rev. 19 (2021) .......................................................................................16

George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Evt'l L. Rev. 3 (1989) ...........................................................5

Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 Tex. Tech. L. Rev. 163 (2020) ..............6

Nicholas Rinehart, Comment: *Three Ways to Sit Under a* Shady Grove, 75 Okla. L. Rev. 861 (2023) ................................................................5

Noah Brown, Note: *Anti-SLAPPed in the Face: The Applicability of Anti-SLAPP Statutes in Federal Court*, 36 Notre Dame J.L. Ethics & Pub. Pol'y 265 (2022)......................................................................................6

# RULE 29(a)(4)(E) CERTIFICATION

The undersigned counsel represent Amici Curiae California Hospital Association, Los Angeles Times and Dan Kanes, who collectively have filed two amicus briefs. The brief filed on behalf of Amicus Curiae Dan Kanes was partially funded by Brickell Key Investments LP, a litigation funder. The brief filed on behalf of Amici Curiae CHA and Los Angeles Times benefited in part by research and drafting done on Mr. Kanes's behalf. Aside from Brickell Key Investments, amici curiae and their counsel, no person contributed money to fund preparation or submission of this brief. Counsel for the parties did not author this brief in whole or in part. The parties have not contributed money intended to fund preparing or submitting the brief.

February 8, 2024                                  Respectfully submitted,


/s/ Chad E. DeVeaux
Chad E. DeVeaux
Attorneys for Amicus Curiae
Dan Kanes

1

**INTEREST OF THE *AMICUS CURIAE*[1]**

Amicus Curiae Dan Kanes was the victim of a garden-variety SLAPP suit whose rights were vindicated by a federal court. He is one of two plaintiffs in an action against the Drone Racing League ("DRL") and its CEO alleging that the defendants committed fraud, breach of fiduciary duty, and breach of contract by defaulting on an agreement that the plaintiffs "would be co-founders of the DRL, with each owning a third of the company." *Laub v. Horbaczewski*, No. 2:17–cv–06210–JAK (KSx), 2019 WL 3492402, at *3 (C.D. Cal. July 30, 2019). After the defendants removed the case to federal court, the CEO filed a counterclaim alleging that Mr. Kanes had defamed him by "edit[ing] the Wikipedia entry for the [DRL]" to reflect that "Plaintiffs were co-founders . . . who created the concept for the company." *Id.* at *4, *7.

The court struck the counterclaim under California's anti-SLAPP law, finding that Mr. Kanes's conduct was protected by the First Amendment because "the disputed statements [were] not defamatory" as a matter of law. *Id.* at *9. The court further held that "[a]s a prevailing defendant on a special motion to strike, [Mr.] Kanes is entitled to recover his . . . attorney's fees and costs" and the specific amount would be "addressed in response to a separate motion." *Id.* at *13. Mr. Kanes then filed a motion for fees and costs, which is currently pending before

---

[1] The parties consent to the filing of this brief.

the district court.[2] If this Court bars use of the anti-SLAPP law in federal court, the fee award will likely be vacated.

## AMICUS'S POSITIONS

The Court granted en banc review to address: (1) whether California anti-SLAPP protections apply in federal court; and (2) whether denial of a California anti-SLAPP motion is appealable under the collateral-order doctrine. Amicus takes no position concerning the latter question. With regard to the first, as explained herein, amicus contends *Erie* requires federal courts to apply the anti-SLAPP law.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Louis Brandeis famously recognized that "[i]t is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting). Justice Brandeis's reasoning did not win the day in *New State Ice*. But his decision for the Court six years later, in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), forever cemented his legacy as a defender of the States' constitutional role as "laboratories of democracy."

---

[2] *See* Plaintiff Dan Kanes's Amended Reply in Support of Motion for Attorneys' Fees, No. 2:17–cv–06210–JAK (KSx), 2020 WL 12893129.

*Erie* is "one of the modern cornerstones of our federalism"[3]—the slogan embodying the Constitution's commitment to "a system in which there is sensitivity to the legitimate interests of both State and National Governments."[4] The core tenet of "Our Federalism" is that a federal court, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."[5] "One of the stellar virtues of Our Federalism" is that it facilitates Brandeisian experimentation by creating a greenhouse "in which fifty-one flowers may blossom." *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581, 584 (5th Cir. 1983) (Goldberg, J., dissenting). *Erie* protects this greenhouse by ensuring that "federal courts . . . are not cast in the role of head gardener." *Id.*

The issues before the Court involve *Erie*'s application to one of the greatest success stories in the history of Brandeisian experimentation—California's anti-SLAPP law.[6] The law tackles a vexing problem that plagues every American jurisdiction. "SLAPP . . ., the acronym for 'strategic lawsuit against public

---

[3] *Hanna v. Plumer*, 380 U.S. 460, 474 (1965) (Harlan, J., concurring).

[4] *Younger v. Harris*, 401 U.S. 37, 44 (1971).

[5] *Id.* at 44. While *Younger* was "the first to capitalize 'Our Federalism' and place it in quotes, the phrase has figured prominently in decisions applying the *Erie* doctrine, both before and after *Younger*." Adam N. Steinmann, *Our Class Action Federalism:* Erie *and the Rules Enabling Act after* Shady Grove, 86 Notre Dame L. Rev. 1131, 1133 n.7 (2011).

[6] *See* Cal. Code of Civ. Proc. § 425.16.

participation,' was coined by . . . professors, George W. Pring and Penelope Canan, who authored the seminal influential studies on this phenomenon."[7] "A SLAPP is a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Robles v. Chalilpoyil*, 181 Cal. App. 4th 566, 572 (2009). Pring's and Canan's work revealed that "normal, middle-class and blue-collar Americans" were "being sued for speaking out politically." George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Evt'l L. Rev. 3, 3 (1989). They exposed that SLAPPs "are found in every state, every government level, every type of political action, and every issue of consequence." *Id.* This is not simply a minor nuisance. "In a representative democracy . . . the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives." *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961). SLAPP suits "censor, intimidate and silence critics by burdening them with the cost of a legal defense." *Owens v. Chasko*, No. 1:11–CV–00335 AWI GSA, 2011 WL 3163261, at *3 (E.D. Cal. July 26, 2011).

"In 1992, California enacted the first state anti-SLAPP law."[8] The law aims "to unmask SLAPP actions masquerading as ordinary lawsuits" and award

---

[7] *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1125 (1999) (Baxter, J., concurring in part and dissenting in part).

[8] Nicholas Rinehart, Comment: *Three Ways to Sit Under a* Shady Grove, 75 Okla. L. Rev. 861, 874 (2023).

"mandatory attorney's fees" to SLAPP victims. *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 54 Cal. App. 5th 738, 750, 764 (2020). California's experiment "trigger[ed] a nationwide movement."[9] Thirty-four other U.S. jurisdictions followed suit by adopting their own anti-SLAPP laws.[10]

Twenty-five years ago, this Circuit correctly held that "the twin [aims] of the *Erie* rule—'discouragement' of forum-shopping and 'avoidance of inequitable administration of the law'"—mandate the anti-SLAPP law's application in federal court. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) ("*Newsham*"). A contrary rule would lead to a tidal wave of cases of the most malignant variety—"meritless suit[s]" designed to punish the "exercise of First Amendment rights"—being directed to federal dockets.

In the ensuing years, the First Circuit followed suit, holding that Maine's anti-SLAPP law, which mirrors California's, likewise applies in federal court. *Godin v. Schencks*, 629 F.3d 79, 81, 85–91 (1st Cir. 2010). But the Second, Fifth, Tenth, Eleventh, and D.C. Circuits rejected this view, holding that state anti-SLAPP laws do not apply in federal court.[11] The principal ground of disagreement

---

[9] Noah Brown, Note: *Anti-SLAPPed in the Face: The Applicability of Anti-SLAPP Statutes in Federal Court*, 36 Notre Dame J.L. Ethics & Pub. Pol'y 265, 266 (2022).

[10] Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 Tex. Tech. L. Rev. 163, 164–65 (2020).

[11] *See La Liberte v. Reid*, 966 F.3d 79, 86–88 (2d Cir. 2020); *Klocke v. Watson*,

is whether such laws contradict the Federal Rules of Civil Procedure (hereinafter the "Federal Rules" or "FRCP"), which "preempt" conflicting state law. *Godin*, 629 F.3d at 87. A Federal Rule preempts a state rule if both "answer the same question." *Shady Grove v. Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). But in determining whether they do so, courts must "interpret[] the Federal Rules . . . with sensitivity to important state interests and regulatory policies." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 n.7 (1996).

Anti-SLAPP laws raise potential conflicts with the FRCP because most include a burden-shifting mechanism that requires the plaintiff, upon a showing that a complaint targeted potentially protected activity, to present "evidence"— without the aid of discovery—supporting "each element of the claim" to avoid dismissal. *Klocke*, 936 F.3d at 244. Jurists who disagree with the Ninth Circuit's rule have opined that such provisions render anti-SLAPP laws inapplicable in federal court because they "answer the same question as Rules 8, 12, and 56," but they do "so in a way that conflicts with those Rules." *Carbone*, 910 F.3d at 1350.

But this Circuit has solved these problems by recognizing "when an anti-SLAPP motion" challenges "the legal sufficiency of a claim, a district court should

---

936 F.3d 240, 244–49 (5th Cir. 2019); *Carbone v. Cable New Network, Inc.*, 910 F.3d 1345, 1349–57 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668–73 (10th Cir. 2018) ("*Los Lobos*"); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–37 (D.C. Cir. 2015).

apply the [Rule] 12(b)(6) standard." *Planned Parenthood Fed. of Am., Inc. v. Center for Med. Progress*, 890 F.3d 282, 834 (9th Cir. 2018) ("*PPFA*"). And when "an anti-SLAPP motion . . . challenges the factual sufficiency of a claim, then the [Rule] 56 standard will apply." *Id.* Thus, under this Circuit's formulation, no conflict exists because Rules 8, 12, and 56—*not* the anti-SLAPP law—"answer[] the question[s]" regarding "the criteria for assessing the sufficiency of a pleading before discovery" and whether, after discovery, "a party's claim is supported by sufficient evidence to avoid pretrial dismissal." *See Carbone*, 910 F.3d at 1349–50.

The Ninth Circuit's approach is faithful to the mandate that "federal courts" must strive to "give effect to the substantive thrust of [a state law]" even if that requires weeding out specific provisions that conflict with the FRCP. *See Gasperini*, 518 U.S. at 426. The Court should continue to honor that pledge.

## ARGUMENT

**I.** **_Erie_ Requires Courts to Interpret the FRCP with Sensitivity to State Policies and Harmonize Conflicting State Laws Whenever Possible.**

**A.** **The Genesis of the _Erie_ Doctrine.**

Overruling *Swift v. Tyson*, 41 U.S. (16 Pet.) 1 (1842), *Erie* held that federal courts hearing claims governed by state law are bound to apply "the common law of the state." *Erie*, 304 U.S. at 71–72. "Diversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination" against non-citizens. *Id.*

at 74. But *Swift* perverted such jurisdiction by empowering federal courts "to exercise their independent judgment as to what [state] law is." *Id.* at 70.

This violated two constitutional tenets. First, it offended state sovereignty by "prevent[ing] uniformity in the administration of [state] law." *Id.* at 75. This is impermissible because the Constitution "preserves the autonomy and independence of the states." *Id.* at 78–79. Second, it "rendered impossible equal protection of the law" by "ma[king] rights enjoyed under . . . [state law] vary according to whether enforcement was sought in [a] state or in [a] federal court." *Id.* at 74–75.

### B.      The Doctrine Is Guided By *Erie*'s "Twin Aims."

*Erie* does not impede the power of federal authorities "to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna*, 380 U.S. at 473. For example, a federal litigant "cannot . . . insist on the right to file . . . pleadings in accord with the time limits applicable in state courts." *Id.* at 468–69. Such "trivial variations" do not "raise the sort of equal protection problems which troubled the Court in *Erie*" and are "unlikely to influence the choice of a forum." *Id.* at 468.

Jurists originally described this delineation in simplistic terms, averring "federal courts are to apply state substantive law and federal procedural law." *Id.* at 465. But experience showed *Erie* problems cannot "be solved by reference to any traditional or common-sense substance-procedure distinction." *Id.* at 465–66. This

is because failing to apply *some* rules historically classified as "procedural" causes "equal protection" and "forum shopping" problems. *Id.* at 468. For example, "statutes of limitations are procedural . . . in nature." *U.S. v. Blackwell*, 852 F.3d 1164, 1166 (9th Cir. 2017). But the failure to apply a state statute of limitations would clearly "promote the choice of [federal] rather than of state courts." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 111 (1945). So, "the question is not whether a [rule] is deemed a matter of 'procedure' in some sense." *Hanna*, 380 U.S. at 466. "The question is does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the claim by the same parties in a State court?" *Id.* "Classification of a law as 'substantive' or 'procedural' for *Erie* purposes" is thus "guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Gasperini*, 518 U.S. at 427–28.

C. ***Erie* Does Not Apply to State Laws that Contradict the FRCP.**

*Erie* does not apply when there is "a 'direct collision'" between the FRCP and "[a] state law." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749 (1980). The FRCP are authorized by the Rules Enabling Act, which empowers the Supreme Court "to prescribe general rules of practice and procedure." 28 U.S.C. § 2072. Thus, unless a Federal Rule is not a valid exercise of Congress's rulemaking authority, the Rule "preempt[s]" conflicting state law. *Godin*, 629 F.3d at 87.

### D. No Collision Exists When Federal and State Rules Can Be Reconciled to Accommodate the Principal State Interests.

The FRCP are not a blunt instrument that blindly displace any state law addressing a subject in their vicinity. Rather, a Federal Rule only displaces state law when it "leav[es] no room for the operation of [the state] law." *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 585 (9th Cir. 2022). This is because *Erie*'s commitment to Our Federalism requires courts to "interpret[] the Federal Rules . . . with sensitivity to important state interests and regulatory policies." *Gasperini*, 518 U.S. at 428 n.7. Thus, "if the federal and state rules can be reconciled, then they do not qualify as in conflict and the court's analysis ends." *Hamilton*, 39 F.4th at 585.

For example, in *Walker*, the Court confronted the question "whether in a diversity action [a] federal court should follow state law, or alternatively, Rule 3 of the [FRCP] in determining when an action is commenced for the purpose of tolling the state statute of limitations." 446 U.S. at 741. Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." *Id.* at 750. But Oklahoma, the state whose law created the cause of action, did "not deem [a]n action 'commenced' for purposes of [its] statute of limitations until service of the summons on the defendant." *Id.* at 742–43. This distinction was critical because the plaintiff timely filed his complaint in federal court, but did not personally serve the defendant until after the limitations period had expired. *Id.*

The Tenth Circuit concluded that "[u]nquestionably, [the law] [wa]s in direct conflict with Rule 3" because Rule 3's plain text dictates that a suit "is commenced by filing a complaint," while the state law stated that it was not "commenced" until "the adversary is served." *Walker v. Armco Steel Corp.*, 592 F.2d 1133, 1135 (10th Cir. 1979). But the High Court rejected such a rigid reading of the FRCP. 446 U.S. at 750–51. It held a Federal Rule only preempts state law when "the 'clash' between [the state law] and the [Federal Rule] [i]s 'unavoidable.'" *Id.* In *Walker*, the "clash" could be avoided by reading Rule 3 narrowly to "govern[] the date from which various timing requirements of the Federal Rules begin to run." *Id.*

This reading is consonant with Our Federalism. Oklahoma's statute deserved federal respect because it was "a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations." *Id.* at 751. Because Rule 3 was susceptible to a reading that avoided a "direct collision," the Court was required to make an "unguided *Erie* Choice" directed solely by its "twin aims." *See Hanna*, 380 U.S. at 471. This required application of the state rule to avoid an "inequitable administration of the law." *Walker*, 446 U.S. at 753.

Cases applying *Walker* have recognized that federal courts must embrace creativity when necessary to enable "the principal state and federal interests [to] be accommodated." *See Gasperini*, 518 U.S. at 436. Thus, federal courts "must make

12

particular efforts to accommodate the substantive aims of states when [they] entertain state law claims." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1016 (9th Cir. 2013). *Gasperini* illustrates this solicitous approach.

The case addressed the "compatibility" of a New York tort reform rule with both the Seventh Amendment and Rule 59. *Gasperini*, 518 U.S. at 419, 438 n.22. New York's rule instructed appellate courts "reviewing a money judgment" to independently "determine whether [the] award deviates materially from what would be reasonable compensation" by "look[ing] to awards approved" by other New York appellate courts "in similar cases." *Id.* at 423, 425. The case was a diversity action brought by Gasperini, a journalist, against the Center for Humanities, when it failed to return original slides he had loaned to the Center. *Id.* at 419. After the jury awarded Gasperini $450,000 in damages, the Second Circuit applied New York's rule to vacate the judgment. *Id.* at 420–21.

The rule's potential conflict with federal authority was two-fold. First, if applied *literally*, it contradicted the Seventh Amendment's Reexamination Clause, which dictates than "no fact tried by a jury, shall be otherwise re-examined in any [federal] Court," other "than according to the rules of the common law."[12] The settled "rules of common law" limit appellate review of damages awards for

---

[12] U.S. Const. amend. VII. "The Seventh Amendment . . . governs proceedings in federal court, but not in state court." *Gasperini*, 518 U.S. at 432.

excessiveness to situations where "the amount was so exorbitant that it 'shocked the conscience of the court.'" *Gasperini*, 518 U.S. at 422. But New York's rule called for appellate courts to employ "closer surveillance than 'shock the conscience' oversight." *Id.* at 424. Thus, "application of [the rule] at the federal appellate level" would violate the Seventh Amendment's "division of trial and appellate court functions." *Id.* at 426. Second, the rule potentially conflicted with Rule 59, which prescribes the "'federal standard' for new trial motions" when damages are alleged to be "excessive." *Id.* at 438 n.22.

Both sides took absolutist positions. Gasperini argued the state rule was completely inapplicable in federal court because the Seventh Amendment answered all the questions regarding "the division of fact-finding responsibility among the jury, district judge and appellate court."[13] The Center argued the rule applied literally as written because, in its view, "federal appellate courts" *are* permitted to "review[] excessive jury verdicts."[14] But the Court held the rule did not call for a "a one-or-the-other choice." 518 U.S. at 437. "The dispositive question . . . [wa]s whether federal courts can give effect to the substantive thrust of [the rule] without untoward alteration of the federal scheme for the trial and

---

[13] Brief for Petitioner (No. 95-719), 1996 WL 88791, at *9.

[14] Brief for Respondent (No. 95-719), 1996 WL 143322, at *8.

decision of civil cases." *Id.* at 426. The Court answered in the affirmative, holding

it could be adapted to accommodate both the Seventh Amendment and Rule 59.

First, while the Reexamination Clause limits federal *appellate* review of jury

awards to the "shock the conscience" standard, it "does not inhibit the authority of

trial judges" in the same manner. *Id.* at 432–33. Federal district court judges enjoy

broad power "to set aside a jury's verdict" as excessive "for a variety of reasons,"

including when "the verdict appears to [the judge] to be against the weight of the

evidence." *Id.* at 433 (citations omitted). Thus, the Court found "New York's

dominant interest can be respected"—while avoiding a collision with the Seventh

Amendment—by reassigning "responsibility for [the rule's] 'deviates materially'

check" from the Court of Appeals to "the federal district court." *Id.* at 437–38.

Second, the Court held this reallocation would not contradict Rule 59. *Id.* at

438 n.22. While Rule 59 governs "new trial motions" alleging "damages are

excessive," it does not say whether federal or state law guides this inquiry. *Id.*

Thus, conflict could be avoided by interpreting it to incorporate state law. *Id.* This

made intuitive sense, as there was "no candidate for that governance other than the

law that [gave] rise to the claim for relief"—"the law of New York." *Id.*

### E.   *Gasperini* **Remains Controlling.**

In 2010, the Supreme Court revisited its direct collision jurisprudence in

*Shady Grove*. That case involved a New York rule stating that actions to recover

certain types of statutory penalties "may not be maintained as a class action." N.Y. C.P.L.R. § 901(b). The plaintiff healthcare provider filed a class action against Allstate in federal court seeking penalties for failing to pay insurance benefits in a timely manner. 559 U.S. at 397. The Court held the state rule did not apply in federal court because it contradicted Rule 23—which prescribes when "[a] class action may be maintained" in federal court. *Id.* at 398, 406 n.8. Some commentators have claimed *Shady Grove* "radical[ly] depart[ed] from [the Court's] holdings in *Walker* and *Gasperini*."[15] This is not so.

The *Shady Grove* "justices fractured 4-4-1 in deciding that [the state rule] could not apply in federal court." *CoreCivic Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1142 (9th Cir. 2022). Only a "small section" garnered a majority vote. *Id.* This section "broke little new ground with respect to the standard for assessing a potential conflict between the [FRCP] and state law." *Id.* It noted that "[t]he framework for [its] decision is familiar." *Shady Grove*, 559 U.S. at 398. In deciding whether a state rule contradicts the FRCP, the court asks whether the rules "answer the same question." *Id.* at 399. Applying this framework, the Court found "Rule 23 unambiguously authorizes any plaintiff, in any federal civil proceeding, to maintain a class action if [its] prerequisites are met." *Id.* at 406. But

---

[15] *See* D. Chanslor Gallenstein, *Whose Law Is It Anyway?*, 60 U. Louisville L. Rev. 19, 30 (2021).

New York's rule "imposes additional requirements" by "barring class actions for certain claims" that satisfy Rule 23. *Id.* at 400–01. This holding does not contradict *Gasperini* because there neither the Seventh Amendment nor Rule 59 answered the question whether *federal district courts* may "review[] a money judgment" to "determine whether [the] award 'deviates materially from what would be reasonable compensation.'" 518 U.S. at 437–38, 438 n.22.

Moreover, Justice Scalia's plurality opinion professed that it was consistent with *Gasperini* and *Walker*. It asserted that these decisions require federal courts to apply state law whenever the "Federal Rule" can "fairly be read not to 'control the issue' addressed by the pertinent state law, thus avoiding a 'direct collision' between federal and state law." *Id.* at 406 n.8. It further agreed that *Erie*'s preemption analysis "requires first determining whether the federal and state rules can be reconciled." *Id.* at 410. Thus, *Shady Grove* did not abrogate *Gasperini*. And no other court may do so because the Supreme Court has made clear that only it has "the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). Accordingly, "if the federal and state rules 'can be reconciled'"— as in *Gasperini*—"then they do not qualify as in conflict and the court's *Erie* analysis ends." *Hamilton,* 39 F.4th at 585 (quoting *Shady Grove*, 559 U.S. at 410).

**II.** *Erie* **Requires Federal Courts to Apply California's anti-SLAPP Law.**

    **A.**     **What the anti-SLAPP Law Is and How It Works.**

California's anti-SLAPP law combats "strategic lawsuit[s] against public participation." *S.B. Beach Prop. v. Berti*, 39 Cal. 4th 374 (2006) "A SLAPP is a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Robles*, 181 Cal. App. 4th at 572. "Because winning is not" a SLAPPer's "motivation, defendants' traditional safeguards against meritless actions"—such as "suits for malicious prosecution and abuse of process"—"are inadequate." *Schoendorf v. U.D. Registry, Inc.*, 97 Cal. App. 4th 227, 235 (2002).

The statute involves a two-step inquiry. First, the "defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the . . . right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If the defendant does so, "[t]he burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim." *Id.*

To meet this burden, in state courts, the plaintiff must present, without discovery, "evidence" that "establish[es] a probability of success on the merits." *Salma v. Capon*, 161 Cal. App. 4th 1275, 1288 (2008). This Circuit held that this burden-shifting provision does not apply in federal court. *PPFA*, 890 F.3d at 833. But—just as *Gasperini* modified application of New York's damages review

rule—this Circuit adapted the anti-SLAPP procedure to implement the law's core functions, "allowing a special motion" and "providing fees and costs." *Id.*

In federal court "when an anti-SLAPP motion . . . challenges only the legal sufficiency of a claim, a district court should apply the [Rule] 12(b)(6) standard." *Id.* at 834. In contrast, "when an anti-SLAPP motion . . . challenges the factual sufficiency of a claim, then the [Rule] 56 standard will apply." *Id.* In such cases, "discovery must be allowed . . . before any decision is made by the court." *Id.*

**B.      The anti-SLAPP Law Qualifies all California's Causes of Action.**

Some critics have dismissed the anti-SLAPP law as an "exotic state procedural rule[]." *Trump Univ.*, 715 F.3d at 275 (9th Cir. 2013) (Kozinski, J. concurring). This ignores the lessons of *Erie* and the tenets of Our Federalism. *Erie* recognized there is no "transcendental body of law outside of any particular State" that invests a plaintiff with a cause of action. 304 U.S. at 79. *Any* cause of action, whether conferred by "statute" or by a "common-law rule" is a form of "state action." *Shelley v. Kraemer*, 334 U.S. 1, 16–17 (1948). Thus, with the exception of causes of action created "by the Federal Constitution or by acts of Congress," any private law claim is created by "the law of [a] state." *Erie*, 304 U.S. at 78.

It is axiomatic "in a republican form of government" that because "a state legislature has the power to create and abolish causes of action, it necessarily must have the power to limit [them]" as well. *Simms v. Holiday Inns, Inc.*, 746 F. Supp.

19

596, 598 (D. Md. 1990). *Erie* dictates that "when local law that creates [a] cause of action qualifies it, [a] 'federal court must follow suit.'" *Gasperini*, 518 U.S. at 428. This is particularly true when the state's qualification "is an integral part of the . . . policies served" by the causes of action it qualifies. *Walker*, 446 U.S. at 751.

The anti-SLAPP law *qualifies* "any cause of action" created by California law that is directed toward a "defendant's exercise of his or her constitutionally protected rights of free speech." *Flatley v. Mauro*, 39 Cal. 4th 299, 311–12 (2006). Most critically, it does this by providing "financial relief in the form of attorney's fees and costs, to persons who have been victimized by . . . SLAPP lawsuits." *Moore v. Liu*, 69 Cal. App. 4th 745, 750 (1999). Thus, the anti-SLAPP law "is an integral part of the . . . policies served by [California law]" and is entitled to significant respect from federal courts. *See Walker*, 446 U.S. at 751.

**C.     This Circuit's anti-SLAPP Decisions Correctly Apply *Erie*.**

*Newsham*, *CoreCivic*, and *PPFA* correctly applied the principles discussed above in holding that *Erie* mandates application of the anti-SLAPP law in federal courts. *Newsham* correctly found the law's "objective [i]s manifestly substantive" for *Erie* purposes. 190 F.3d at 973. This is because "the twin [aims] of the *Erie* rule—'discouragement' of forum-shopping and avoidance of inequitable administration of the law'—favor [its] application . . . in federal court." *Id.*

"Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." *Id.* Indeed, eliminating such protections would not only lead to more cases being diverted to federal court—it would inundate federal dockets with a malignant species of frivolous suits. Likewise, denying SLAPP victims "their substantive rights to attorneys' fees" would be inequitable. *Id.* at 972. It would "render[] impossible equal protection of the law" by making a SLAPP victim's right to fees "vary according to whether enforcement was sought in [a] state or in [a] federal court." *See Erie*, 304 U.S. at 74–75.

Moreover, *CoreCivic* and *PPFA* "prevent the collision" of the law with the FRCP by "weeding out specific provisions . . . that ran afoul of the *Erie* doctrine." *CoreCivic*, 46 F.4th at 1140. Hence, "when an anti-SLAPP motion" challenges "the legal sufficiency of a claim, a district court should apply the [Rule] 12(b)(6) standard." *PPFA*, 890 F.3d at 834. And when a motion "challenges the factual sufficiency of a claim, then the [Rule] 56 standard will apply." *Id.*

## III. Courts in Disagreement with this Circuit Misapplied the *Erie* Test.

### A. *Los Lobos* Wrongly Held that Fee-Shifting Is Not Substantive.

In *Los Lobos*, the Tenth Circuit addressed New Mexico's anti-SLAPP statute. 885 F.3d at 668–73. In the court's estimation, New Mexico's law does not "shift[] substantive burdens" or "alter[] substantive standards." *Id.* at 670. It

operates as an "affirmative defense" that empowers a court to "award reasonable attorney fees" if it "grants a motion to dismiss, a motion for judgment on the pleadings or a motion for summary judgment" after finding that the complaint targeted protected activity. NM ST § 38-2-9.1(B). Rejecting arguments that the law included substantive elements, the court noted the defendant's "faulty reasoning finds its genesis (not surprisingly) in the Ninth Circuit's [precedent]" and other cases that "blindly follow[]" it without "critical analysis." *Los Lobos*, 885 F.3d at 672 n.7. Finding the law "will not alter [a] suit's outcome because it does not provide a defendant the right to avoid liability apart from a separate determination of the suit's underlying merits," *Los Lobos* dismissed it as a purely "procedural mechanism for vindicating existing rights and nothing more." *Id.* at 673.

This reasoning ignores the rule that *Erie* problems cannot "be solved by reference to any traditional . . . substance-procedure distinction." *See Hanna*, 380 U.S. at 465–66. "Classification of a law as 'substantive' or 'procedural'" is "guided by 'the twin aims of the *Erie* rule." *Gasperini*, 518 U.S. at 427–28. As this Circuit correctly held, an anti-SLAPP law's fee-shifting mandate "[i]s manifestly substantive" under *Erie* because failure to apply it would create "a significant incentive to shop for a federal forum." *Newsham*, 190 F.3d at 973. Such a failure would also inequitably make the right to fees "vary according to whether [suit was filed] in [a] state or in [a] federal court." *See Erie*, 304 U.S. at 74–75.

22

## B. Four Circuits Wrongly Held anti-SLAPP Laws Violate the FRCP.

The Second, Fifth, Eleventh, and D.C. Circuits held that California's anti-SLAPP law and other laws that mirror its terms cannot apply in federal court because they contravene the FRCP.[16] These decisions all erred by regarding the question as a "one-or-the-other choice" and failing to consider whether "federal courts can give effect to the substantive thrust of [anti-SLAPP laws] without untoward alteration of the federal scheme." *See Gasperini*, 518 U.S. at 437.

The laws at issue all included a burden-shifting mechanism that required the plaintiff, upon a showing that a complaint targeted potentially protected activity, to present "evidence," without discovery, supporting "each element of the claim" to avoid dismissal. *See Klocke*, 936 F.3d at 244; *see also La Liberte*, 966 F.3d at 87; *Carbone*, 910 F.3d at 1350; *Abbas*, 783 F.3d at 1333–34. All these cases found a direct collision with the FRCP because these burden-shifting provisions "answer the same question as Rules 8, 12, and 56," but they do "so in a way that conflicts with those Rules." *Carbone*, 910 F.3d at 1350; *see also La Liberte*, 966 F.3d at 87; *Klocke*, 936 F.3d at 245–46; *Abbas*, 783 F.3d at 1334.

"Rules 8 and 12 define the criteria for assessing the sufficiency of a pleading before discovery," prescribing that if a complaint does not contain "a short and

---

[16] *See La Liberte*, 966 F.3d 79, 86–88; *Klocke*, 936 F.3d at 244–49; *Carbone*, 910 F.3d at 1349–57; *Abbas*, 783 F.3d at 1333–37.

plain statement of the claim showing that the pleader is entitled to relief," it may be dismissed "for failure to state a claim." *Carbone*, 910 F.3d at 1350; *see also La Liberte*, 966 F.3d at 87; *Klocke*, 936 F.3d at 245–46; *Abbas*, 783 F.3d at 1334. Further, Rule 56 provides that "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Carbone*, 910 F.3d at 1350; *see also La Liberte*, 966 F.3d at 87; *Klocke*, 936 F.3d at 246; *Abbas*, 783 F.3d at 1334. Thus, these courts held such statutes cannot apply in federal court because requiring litigants to show, without discovery, "a likelihood of success on the merits . . . set[s] up an additional hurdle [to] jump to get to trial." *See Klocke*, 936 F.3d at 245; *see also La Liberte*, 966 F.3d at 87; *Carbone*, 910 F.3d at 1350; *Abbas*, 783 F.3d at 1334.

But, again, this Circuit's approach solves these problems by recognizing "when an anti-SLAPP motion" challenges "the legal sufficiency of a claim, a district court should apply the [Rule] 12(b)(6) standard." *PPFA*, 890 F.3d at 834. And "when an anti-SLAPP motion . . . challenges the factual sufficiency of a claim, then the [Rule] 56 standard will apply." *Id.* In such cases, "discovery must be allowed . . . before any decision is made." *Id.* Thus, under this Circuit's approach, Rules 8, 12, and 56—*not* the anti-SLAPP law—"answer[] the question[s]" regarding "the criteria for assessing the sufficiency of a pleading before discovery" and whether, after discovery, "a party's claim is supported by

24

sufficient evidence to avoid pretrial dismissal." *See Carbone*, 910 F.3d at 1349–50.

*Abbas* and *La Liberte* considered whether these conflicts could be avoided by evaluating the legal sufficiency of SLAPP suits under the standards prescribed by Rules 12 and 56 and awarding fees when they are not satisfied. *Abbas*, 783 F.3d at 1134; *La Liberte*, 966 F.3d at 88. They rejected this idea because "it requires the Court to re-write the [state law's] special motion to dismiss provision." *Abbas*, 783 F.3d at 1134–35; *accord La Liberte*, 966 F.3d at 88. This ignores *Gasperini*.

There, Rule 59 and the Seventh Amendment answered *in the negative* the question presented by the statute's *literal* terms: Can a federal appellate court "determine whether [a money judgment] deviates materially from what would be reasonable compensation[?]" *Gasperini*, 518 U.S. at 423, 425. But that did not end the inquiry because the rule did not call for "a one-or-the-other choice." *Id.* at 437. The Court held "New York's dominant interest can be respected" by reassigning "responsibility for [the rule's] 'deviates materially' check" from the Court of Appeals to the "district court." *Id.* at 437–38. This avoided the conflict because it allows the Seventh Amendment and Rule 59—which implicitly incorporates "the [state] law that [gave] rise to the claim"—to answer the question of what criteria govern "new trial motions" for "excessive" damages. *Id.* at 437–38, 438 n.22.

*Gasperini*'s solution clearly "require[d] the Court to re-write" the law's provisions. *See Abbas*, 783 F.3d at 1134–35. The law instructed courts hearing a

case "*on an appeal*" to determine whether an award "deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c) (emphasis added). *Gasperini*'s juristic cutting and pasting may strike some as incongruous. But such incongruity is the price of Our Federalism. Federal courts must strive to "give effect to the substantive thrust of [a state rule]" if they can find a way to do so "without untoward alteration of the federal scheme." *Gasperini*, 518 U.S. at 426. This Circuit's anti-SLAPP jurisprudence is faithful to that pledge.

## IV. CONCLUSION

This Circuit should reaffirm its anti-SLAPP precedents.


Dated: February 8, 2024


/s/ Chad E. DeVeaux
Chad E. DeVeaux
*cdeveaux@bartkolaw.com*
BARTKO LLP
One Embarcadero Center, Suite 800
San Francisco, California 94111
(415) 956-1900

Attorneys for Amicus Curiae
Dan Kanes

26

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-35305

I am the attorney or self-represented party.

**This brief contains** 6,305 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Chad E. DeVeaux | **Date** | February 8, 2024

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** 27 *Rev. 12/01/22*